## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH



### NO. 02-11-00015-CV

IN THE INTEREST OF G.A.H. AND
K.D.B., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant G.H. (Father)[2] appeals the termination of his parental rights to

G.A.H. (Ginny) and K.D.B. (Katie).  We will affirm.

### I.  Background

In September 2009, the Department of Family and Protective Services (the

Department) received a referral that Ginny and Katie were in danger from

neglectful supervision.  The referral alleged that the children's mother would

---

[1]*See* Tex. R. App. P. 47.4.

[2]We use aliases for the children and the parents and foster parents throughout this opinion.  *See* Tex. R. App. P. 9.8(b)(2).

leave them with family members and would not pick them up for as long as a month. In December 2009, the Department took Ginny and Katie from their mother and placed them in foster care with the Browns. Mr. Brown is the brother of the children's maternal grandmother. Father was aware of CPS's involvement and signed a release allowing the children to be placed with the Browns.

Ginny and Katie's case was assigned to conservatorship worker Melanie Scott. Scott could not locate Father. The only information the children's mother could provide was that Father was living "in Kansas City somewhere."[3] Scott eventually contacted Father's mother on March 3, 2010, who also could not provide a contact address or phone number. Father's mother told Scott that Father "was just kind of living here and there, that he didn't have a stable environment and there was no way to get ahold of him."

In August of 2010, Father finally contacted Scott. Father admitted that he had received Scott's messages through his mother but had not attempted to contact Scott or anyone at CPS because he did not have stable housing or employment. At the time he called Scott, Father had been employed for a month. Scott obtained Father's address and mailed him his service plan on August 23, 2010. On September 14, 2010, Father and Scott spoke again over the phone. Father told Scott he had received the service plan, and they

---

[3]The parental rights of the girls' mother were terminated earlier in this case by an interlocutory order on October 27, 2010. The mother has not appealed the termination of her rights and is not a party to this appeal.

2

discussed providers where Father could engage in services. Scott gave Father the phone numbers of various resources and told him that it was his responsibility to complete the services and fax or e-mail her documentation.

During their August phone call, Father expressed an interest in visiting his daughters on Ginny's birthday, and Scott offered to arrange visitation for him if he came to Texas. Father also told Scott he was going to mail Ginny a birthday present. When they spoke again in September, Father told Scott that his sister was getting married and that the wedding would "interfere" with his plans to visit his children. He never visited the children or sent any presents. Father never wrote or called his daughters, despite being told by Scott that he could.

Trial was held on December 7, 2010. Father appeared by counsel but not in person. Father's counsel stated that she was not aware that Father would not be attending the trial until the day before when he faxed a doctor's note explaining that he was on prescription medication and unable to drive.

At trial, Scott testified to the trouble in locating and communicating with Father. She further stated that she believed it was in the children's best interest for Father's parental rights to be terminated. Scott said that CPS's permanent plan for the children was for them to be adopted by their foster parents, the Browns.

Mr. Brown, the only other witness at trial, testified that he spoke to Father once in December 2009 and once in February 2010 regarding blood work to determine whether he was Katie's father. Brown said that Father has made no

attempt to visit the girls while they were in the Browns' care and that he did not provide any financial support or supplies to help care for the children. He testified that the girls call him "dad" and Mrs. Brown "mom" and that they would love to adopt the children.

The trial court found that Father's parental rights should be terminated under section 161.001 of the family code and ordered that managing conservatorship continue with the Department. This appeal followed.

## II. Standard of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the Department seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in

4

favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re M.C.T.*, 250 S.W.3d 161, 167 (Tex. App.—Fort Worth 2008, no pet.).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001 (West Supp. 2010); § 161.206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification).

### III. Discussion

Father appeals the termination of his parental rights in six issues. The Department argues that Father's first, fourth, fifth, and sixth issues have been forfeited because he did not file a statement of points as required by the family code. *See* Tex. Fam. Code Ann. § 263.405 (West 2008). Father admits that he never filed a statement of points, but claims in his second issue that the failure was the result of ineffective assistance by his trial counsel.[4] We therefore address Father's second issue first.

---

[4]A claim of ineffective assistance of counsel in a parental rights termination case may be brought on appeal despite a failure to file a statement of points. *In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009).

5

## A. Ineffective Assistance of Counsel

To prove ineffective assistance, the appellant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *see J.O.A.*, 283 S.W.3d at 342 (applying *Strickland* to a parental rights termination case). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "To make this showing, [Father] would be required to demonstrate that he could prevail on appeal on [the] issues raised in his late-filed statement of points."[5] *In re B.G.*, 317 S.W.3d 250, 256 (Tex. 2010); *see also J.O.A.*, 283 S.W.3d at 344 (noting that appellant father must show that "had counsel properly preserved error by filing the statement of points, the court of appeals would have reversed the termination" based on the issues he would have raised in his statement of points). If Father's trial counsel could not have filed any meritorious claim on appeal, a failure to file a statement of points "would not necessarily indicate deficient representation." *Robinson v.*

---

[5]Father never filed a statement of points, even an untimely one. However, he argued in his first amended motion for new trial and in his first, fourth, fifth, and sixth issues on appeal that the evidence was legally and factually insufficient to support the termination of his rights and that the denial of his motion for a continuance and the denial of his motion for an extension of the dismissal date precluded him from presenting evidence necessary for his defense. Because he does not claim that he would have raised any other issues in his statement of points besides those he attempts to raise now on appeal, we will assume for the purposes of our evaluation under *Strickland* that these would be the issues he would have raised.

*Dep't of Family & Protective Servs.*, 317 S.W.3d 410, 411 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Thus, in order to evaluate Father's claim of ineffective assistance of counsel, we review the merit of his other issues. *See J.O.A.*, 283 S.W.3d at 344–47 (evaluating appellant father's issues on appeal under the second prong of the *Strickland* test).

### 1. The Motions for Continuance and Extension of Dismissal Date

In his first issue, Father argues that the trial court abused its discretion by denying his motion for continuance and his motion for an extension of the dismissal date. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

On December 1, 2010, six days before trial, Father filed a motion for continuance. Father claimed only that he "need[ed] time to complete services and be part of his children's li[ves]" and that the continuance "is not sought solely for delay but that justice may be done." Texas Rule of Civil Procedure 251 states that no continuance will be granted "except for sufficient cause supported by

7

affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. A trial court is presumed to have correctly exercised its discretion when it denies a motion that does not comply with the requirements of Rule 251. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

Father's motion for continuance was not supported by affidavit, and he does not argue that the other parties consented to a continuance or that under some other operation of law a continuance was required. The trial court did not abuse its discretion in denying Father's motion for continuance. *See In re C.P.V.Y.*, 315 S.W.3d 260, 270 (Tex. App.—Beaumont 2010, no pet.) (presuming that the trial court did not abuse its discretion by denying a motion for continuance that was not supported by affidavit); *In re Z.C.*, 280 S.W.3d 470, 478 (Tex. App.—Fort Worth 2009, pet. struck) (holding that because a motion for continuance was unsworn and unsupported by affidavit, "under the plain language of the rule, the trial court was without discretion to grant it").

Also on December 1, 2010, Father filed a motion requesting an extension of the dismissal date. Section 263.401 of the family code requires that the trial court dismiss the suit affecting the parent-child relationship after one year unless trial has commenced or the court has granted an extension. Tex. Fam. Code Ann. § 263.401(a) (West Supp. 2010). Section 263.401(b) also requires the moving party to prove (1) "that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department" and (2) that continuing the appointment of the department as temporary managing

8

conservator is in the best interest of the child. *Id*. § 263.401(b). The dismissal date for this case was set for December 27, 2010. In his motion, Father argued only that "[t]he circumstances of the case and the needs of the children are such that it would not be in the best interest of the children to dismiss the suit or to render final orders" and that an extension would be "in the best interest of the children."

Father did not testify at the hearing and there is no affidavit in the record demonstrating any extraordinary circumstances that would support an extension. *See In re D.K.*, No. 02-09-00117-CV, 2009 WL 5227514, at *2 (Tex. App.—Fort Worth Dec. 31, 2009, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by denying appellant's motion for extension when she presented no evidence in support); *see also In re Z.J.C.*, No. 10-09-00026-CV, 2009 WL 2179976, at *5 (Tex. App.—Waco July 22, 2009, no pet.) (noting that the appellant could not show harm by court's denial of her motion for continuance because she "never alleged in her motion for continuance, her motion for new trial, or in her brief on appeal how much time she needed or what other resources could have been discovered had she had additional time to prepare for trial"). At the hearing on the motion, Father's trial counsel stated that the extension was needed so that Father could complete his services. The Department objected to an extension because Father had more than ample opportunity to begin his services. Father's attorney claimed that all of the parenting classes offered in Father's vicinity were booked. This does not explain

9

his failure to complete any of his other services, including drug assessment, anger management courses, psychological evaluation, or counseling. "We have repeatedly held that when a parent, through his or her own choices, fails to comply with a service plan and then at the time of the termination trial requests a continuance or an extension of the statutory dismissal deadline in order to complete the plan, the trial court does not abuse its discretion by denying the continuance or extension." *In re K.P.,* No. 02-09-00028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.). Father failed to prove any extraordinary circumstances that would warrant an extension. The trial court did not abuse its discretion in denying Father's motion for an extension. Father would not prevail on his first issue.

### 2. Sufficiency of the Evidence

In his fourth, fifth, and sixth issues, Father complains that the evidence presented at trial is legally and factually insufficient to support the trial court's termination of his parental rights under section 161.001 of the family code.

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). In

this case, the Department alleged proof under subsections (B) and (N) of section 161.001 of the family code as to Father.[6]  Section (B) states that the court may order termination of the parent-child relationship if the court finds that the parent has "voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months."  Tex. Fam. Code Ann. § 161.001(1)(B) (West 2008).  Section (N) allows for termination if the parent has

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:
>
> (i)  the department or authorized agency has made reasonable efforts to return the child to the parent;
>
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
>
> (iii) the parent has demonstrated an inability to provide the child with a safe environment.

*Id*. § 161.001(1)(N).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were

---

[6]In his fifth issue, Father claims that the trial court found that Father "voluntarily left the child[ren] alone or in the possession of another without providing adequate support of the child[ren] and remained away for a period of at least six months."  Tex. Fam. Code Ann. § 161.001(1)(C).  However, it does not appear that the trial court made such a finding or terminated Father's parental rights under this subsection.  We need not address Father's fifth issue.

11

proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that Father violated subsections (B) or (N) of section 161.001(1). Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of

the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

In his fourth issue, Father argues that there is legally and factually insufficient evidence to support a finding that he left the children in the possession of the Browns without expressing an intent to return.[7] *See* Tex. Fam. Code Ann. § 161.001(1)(B).

Brown testified that Father was aware that the Department had placed the children with the Browns and that Father indicated that he wanted the children to live with the Browns. Scott testified that Father was aware that the Department had been trying to find him for months but Father chose not to contact the Department. Father did express to Scott an interest in visiting his daughters on Ginny's birthday, but he later told Scott that a family wedding would prevent him from travelling, and he never made any other plans to travel to Texas. He never visited the children or sent any presents. Father never wrote or called his daughters, despite being told by Scott that he could. When Father called the Browns to request a blood test, he did not ask to speak to the children and said nothing about wishing to see them. Mr. Brown testified that Father has not shown any interest in seeing the children since they have been in the Browns'

---

[7]Subsection (B) also requires evidence that Father did not provide "for the adequate support of the child, and remained away for a period of at least three months," *see* Tex. Fam. Code Ann. § 161.001(1)(B), but Father does not challenge those findings in his argument on appeal.

care. Father never expressed to Mr. Brown an intent to return for his children. Father never provided the Browns with financial support for his children.

There was no evidence that Father was interested in gaining custody of the children, moving to Texas to be with the children, or bringing the girls to Missouri. The evidence supports the trial court's inherent finding that Father had no plans for a permanent reunification with his children. One suggestion of a single visit that was never followed through on is not an expression of an intent to return. A factfinder could have reasonably formed a firm conviction that Father voluntarily left the children in the Browns' possession without expressing an intent to return. We hold there is legally and factually sufficient evidence to support termination under subsection (B). Father would not prevail on his fourth issue.

Along with a best interest finding, a finding of only one ground alleged under section 161.001(1) is necessary to support a judgment of termination. *See* Tex. Fam. Code Ann. § 161.001. Thus, even if we were to hold that Father could prevail under his sixth issue (that there was insufficient evidence to support termination under subsection (N)), because the judgment could be supported under subsection (B), we need not address Father's sixth issue. *See* Tex. R. App. P. 47.1; *see also In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.); *In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.).

14

Having determined that Father would not have prevailed on any of the issues he would have brought had he timely filed a statement of points, we hold that Father failed to demonstrate that his trial counsel's failure to file a statement of points prejudiced his defense and deprived him of a fair trial. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We overrule Father's second issue.

Because Father did not file a statement of issues, he has forfeited the issues raised in his first, fourth, fifth, and sixth points. *See* Tex. Fam. Code Ann. § 263.405(i); *In re J.H.G.*, 302 S.W.3d 304, 306 (Tex. 2010). We overrule those issues.

## B. Motion to Extend the Deadline to File a Statement of Points

In his third issue, Father argues that the trial court abused its discretion in denying his motion to extend the deadline to file a statement of points.

The trial court signed the final order of termination on December 7, 2010. Father filed his motion for new trial and notice of appeal on January 6, 2011. He did not file a statement of points with his notice of appeal. On January 19, 2011, Father filed an amended motion for new trial and a motion to extend the deadline to file a statement of points, which the trial court denied.

A party wishing to appeal a termination order must file with the trial court a statement of points on which the party intends to appeal within fifteen days from the day the order was signed. Tex. Fam. Code Ann. § 263.405(b). A trial court may grant a motion to extend the deadline to file a statement of points if the movant shows good cause for his failure to timely file and the new deadline is

within thirty days of the termination order. Tex. R. Civ. P. 5; *In re M.N.*, 262 S.W.3d 799, 803 (Tex. 2008). The motion itself was not filed within thirty days of the termination order. The trial court did not abuse its discretion by denying the late-filed motion. However, even if the trial court abused its discretion in denying Father's motion, Father cannot show harm because, as discussed above, Father would not have prevailed on appeal. *See* Tex. R. App. P. 44.1(a). We overrule Father's third issue.

## Conclusion

Having overruled Father's six issues, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL: McCOY, MEIER, and GABRIEL, JJ.

DELIVERED: October 6, 2011