02-11-075-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00075-CV

 

 


 
 
 IN
 THE INTEREST OF J.N.H., A CHILD
 
 
  
 
 
  
 
 


 

----------

 

FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
E.B. appeals the termination of his parental rights to his daughter, J.N.H.  He
contends in four issues that the evidence is insufficient to support the jury’s
findings that termination is in J.N.H.’s best interest and that he knowingly
placed or allowed J.N.H. to remain in conditions or surroundings that
endangered her, engaged in conduct that endangered her physical and emotional
well-being, and voluntarily abandoned J.N.H.’s mother while failing to provide
adequate support or medical care to her.  We affirm.

Background
Facts

          J.N.H.
is not appellant’s only child; appellant has two other children, both sons,
whom he has not seen in several years.  After his first son was born in April
2003, appellant burglarized a vehicle in August 2003, was arrested for possession
of crack cocaine in October 2003, and was placed on a three-year probation term
for that offense in January 2004.  In the early months of 2004, the State
charged appellant with two other offenses for which he was eventually
convicted:  assault-family violence against his sons’ mother and unlawful
carrying of a knife that the police found in a vehicle that appellant had
stolen.  Because appellant failed to report to his probation officer for his
possession-of-crack-cocaine offense, the State filed a motion to revoke the
probation in April 2004, and after a court revoked the probation, appellant served
time in three facilities.  About a month before appellant’s December 2004
release from confinement, his first son’s mother, now pregnant with appellant’s
second son, left appellant, and he has never again heard from her or his two
sons.

          In
2005, appellant began dealing drugs.  Within just a few months after his
release from confinement for his first possession-of-crack-cocaine offense,
appellant committed, and was eventually convicted for, three deadly conduct
offenses[2] and possession of
marijuana.  Not long after appellant committed those offenses, in April 2005, the
police arrested him again for possession of crack cocaine, and he was
incarcerated for eleven months.  When authorities released appellant from
confinement in 2006, he was approximately twenty-one years old, and he met J.N.H.’s
mother, E.H., who was approximately sixteen years old.  But only two months
after being released from confinement, in May 2006, appellant was yet again arrested
for possession of crack cocaine.  That offense resulted in him spending eight
months in county jail before being convicted and receiving a sentence of time
served; he was released from confinement on a condition that he live at a halfway
house.  Because appellant opted not to live at the halfway house, he was reconfined
for two more months.

          When
appellant was released in approximately July 2007, he eventually started using
drugs again.  It was about that time that he became more closely acquainted
with E.H.  They began using heroin, mixed with Tylenol, “just about every day” and
had sex a few times, although appellant was then dating another woman who
became his wife in October 2008.

          In
early 2008, E.H. informed appellant that she was pregnant with his child.  According
to appellant, E.H. used drugs while pregnant with J.N.H., and appellant told
suppliers to not give drugs to E.H.  According to E.H., appellant gave her $20
and told her to “save it” for J.N.H., but he otherwise never supported E.H. or
J.N.H. nor asked about E.H.’s or J.N.H.’s medical care.[3] 
A few months before J.N.H. was born, in the summer of 2008, the police arrested
appellant for aggravated robbery with a deadly weapon, to which he pled guilty. 
Appellant had used a BB gun while taking a lady’s purse.  A court sentenced him
to twenty years’ confinement, which makes him eligible for parole in November 2018. 
According to appellant’s mother, between October 2003 and the time of trial in
February 2011, appellant spent only twenty-two months outside of confinement.

          J.N.H.
was born in August 2008 while appellant was in prison; E.H. wrote a letter to
appellant to tell him about the birth.  Appellant has never met J.N.H.,
although he sent her a card on her first birthday.  Given his confinement, he
was ruled out as a suspect in J.N.H.’s November 2009 injuries, for which the
Department of Family and Protective Services (the Department) originally obtained
custody of J.N.H.  Specifically, J.N.H., who was eighteen months old at the
time, had burn blisters on her feet, bruises on her body and face, swollen and
bleeding eyes, and hair loss as a result of her hair being pulled out.  The
bruising appeared to have occurred over a period of time.[4] 
J.N.H. also tested positive for heroin.[5]  The Department placed
J.N.H. in foster care and sent a letter to appellant to explain that she had
been removed from E.H.  Appellant responded to the letter by acknowledging his
paternity of J.N.H. and by asking the Department to allow J.N.H. to live with
his mother or grandmother.

          The
Department filed a petition for the termination of J.N.H.’s parents’ rights.  The
trial court entered orders that named the Department as J.N.H.’s temporary sole
managing conservator.  In response to the Department’s petition, E.H., who was
twenty years old at the time of the trial, voluntarily relinquished her
parental rights to J.N.H.  But appellant answered the petition, received
appointed counsel, and contested the termination of his parental rights in a
jury trial that included testimony from appellant, his mother and sister, E.H.,
E.H.’s cousin, a gang expert, a Court Appointed Special Advocates (CASA)
representative, and two Department representatives.

          The
Department and CASA representatives recommended against placing J.N.H. in the
home of appellant’s mother because although she passed criminal history and
background checks, she never completed the home study administered by the
Department; she repeatedly failed to respond to the Department’s efforts to
gather necessary information regarding her ex-boyfriend of fourteen years.  Andrea
Calloway, the CASA volunteer who worked on J.N.H.’s case, believed that it was
suspicious that appellant’s mother would not provide the information regarding her
ex-boyfriend.  Calloway said, “If there was nothing to hide, then she would
have provided it.”  In addition, the Department’s caseworker, Amanda Mention,
expressed concern about the fact that appellant’s mother had allowed appellant
to live with her while she knew that he was using drugs.[6] 
The Department also ruled out placing J.N.H. with relatives on E.H.’s father’s
side of the family because they had “extensive criminal histor[ies] and CPS histor[ies].”

          Instead,
the Department and Calloway recommended that E.H.’s cousin, who lives in
Houston, adopt J.N.H., and E.H. and her cousin shared that desire.  The
Department completed a home study on E.H.’s cousin, and Calloway thought that
E.H.’s cousin’s family was “extremely appropriate” and that they would be a
“great placement” for J.N.H.

          At
the time of the jury trial, J.N.H. was approximately two and a half years old. 
E.H.’s cousin was a teaching assistant for high school special education
students, and she was married to a man who held a stable job.  They had two
children of their own, but they still wanted to adopt J.N.H.  J.N.H. got along
with the family, who had traveled a long distance to visit her for several
hours on most weekends from December 2010 until the trial in February 2011.

          After
hearing all of the testimony, the jury deliberated for only fifteen minutes
before finding that the evidence supporting termination was clear and
convincing.  Specifically, the jury decided that termination was in J.N.H.’s
best interest and was appropriate under subsections (D), (E), (H), and (Q) of
family code section 161.001(1).  Accordingly, the trial court rendered a
judgment that terminates appellant’s parental rights to J.N.H.  Appellant brought
this appeal.

The
Propriety of the Jury’s Termination Decision

          A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While parental
rights are of constitutional magnitude, they are not absolute.  Just as it is
imperative for courts to recognize the constitutional underpinnings of the
parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanently—to divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child’s right to inherit.  Tex.
Fam. Code. Ann. § 161.206(b) (West 2008); Holick v. Smith, 685 S.W.2d
18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings in favor of
the parent.  Holick, 685 S.W.2d at 20–21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.—Fort Worth 2008, no pet.).

          Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001 (West Supp. 2011).  Evidence is clear and convincing if it “will
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.”  Id. § 101.007 (West
2008).  Due process demands this heightened standard because termination
results in permanent, irrevocable changes for the parent and child.  In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).

Statutory
ground for termination     

          In
his first three issues, appellant challenges the sufficiency of the evidence to
support the jury’s findings for the statutory grounds for termination under subsections
(D), (E), and (H) of family code section 161.001(1).  See Tex. Fam. Code
Ann. § 161.001(1)(D), (E), (H).  Under section 161.001, the petitioner must establish
a ground listed under subsection (1) of the statute and prove that termination
is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001; In
re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Under the first element, only one
predicate finding listed under subsection (1) is necessary to support a
termination judgment.  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003); In
re J.T.G., 121 S.W.3d 117, 128 (Tex. App.—Fort Worth 2003, no pet.). 
Accordingly, in evaluating the first element, we need only address predicates
necessary to support termination.  See A.V., 113 S.W.3d at 362; see
also Tex. R. App. P. 47.1 (requiring appellate court to address only issues
necessary to disposition of appeal).

          Appellant
does not challenge the jury’s answer to question four of the jury charge, in
which the jury found by clear and convincing evidence that appellant knowingly
engaged in criminal conduct that resulted in his conviction, confinement, and
inability to care for J.N.H. for two years from the date of the filing of the
petition.  Moreover, appellant presumes that his conviction for aggravated
robbery with a deadly weapon, which resulted in his imprisonment without eligibility
for parole until 2018, seven years from the petition date, satisfies the jury’s
finding to terminate his parental rights under section 161.001(1)(Q).  See
Tex. Fam. Code Ann. § 161.001(1)(Q); A.V., 113 S.W.3d at 360.  Thus,
we hold that the jury’s finding under section 161.001(1)(Q) is dispositive of
the first element required for termination, and we need not decide whether the
jury’s termination decision was also appropriate under subsections (D), (E),
and (H).  See In re D.S., 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011,
no pet.).  We overrule appellant’s first three issues.  See J.T.G.,
121 S.W.3d at 128.

J.N.H.’s
best interest

          We
must, however, consider appellant’s fourth issue on appeal:  whether the
evidence is factually sufficient to establish that termination is in the best
interest of the child.  In reviewing the evidence for factual sufficiency, we
must give due deference to the jury’s findings and not supplant the verdict
with our own.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine
whether, on the entire record, the jury could reasonably form a firm conviction
or belief that termination of the parent-child relationship is in J.N.H’s best
interest.  See Tex. Fam. Code Ann. § 161.001(2); C.H., 89 S.W.3d
at 28.  If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction in the truth of its finding, then the evidence is factually
insufficient.  H.R.M., 209 S.W.3d at 108.

          There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006).  However,
prompt and permanent placement of the child in a safe environment is also
presumed to be in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a)
(West 2008).  Nonexclusive factors that the trier of fact in a termination case
may use in determining the best interest of the child include the desires of
the child, the emotional and physical needs of the child now and in the future,
the emotional and physical danger to the child now and in the future, the
parental abilities of the individuals seeking custody, the programs available
to assist these individuals to promote the best interest of the child, the
plans for the child by these individuals or by the agency seeking custody, the
stability of the home or proposed placement, the acts or omissions of the
parent which may indicate that the existing parent-child relationship is not a
proper one, and any excuse for the acts or omissions of the parent.  Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976); In re Z.C., 280 S.W.3d
470, 475–76 (Tex. App.—Fort Worth 2009, pet. denied).  Undisputed evidence of
just one factor may be sufficient in a particular case to support a finding
that termination is in the best interest of the child.  C.H., 89
S.W.3d at 27.  On the other hand, the presence of scant evidence
relevant to each factor will not support such a finding.  Id.

          J.N.H.
is a young child with a history of traumatic physical abuse.  The jury could
have reasonably determined, therefore, that her best interest includes shelter
from additional harm and uncertainty.  See Tex. Fam. Code Ann. § 263.307(a),
(b)(1), (3); In re T.T.F., 331 S.W.3d 461, 485 (Tex. App.—Fort Worth
2010, no pet.).  While appellant did not contribute to J.N.H.’s injuries, he previously
pled guilty to an assault-family violence charge, committed deadly conduct, and
is currently serving a twenty-year sentence for aggravated robbery with a
deadly weapon.  The jury could have rationally concluded that it is in J.N.H.’s
best interest for her future to be untangled from these kinds of offenses.  See
Tex. Fam. Code Ann. § 263.307(b)(12)(E); In re R.R., 294
S.W.3d 213, 235 (Tex. App.—Fort Worth 2009, no pet.) (considering evidence of a
father’s past convictions supportive to the trial court’s best interest
finding).

          Next,
our evaluation of appellant’s parenting abilities cannot discount his
participation in drugs and criminal conduct while being a father.  See
Tex. Fam. Code Ann. § 263.307(b)(12).  Appellant’s use and dealing of drugs has
been extensive, and appellant continued to use drugs after he fathered two
sons.  Despite several confinements for drug-related offenses, appellant
consistently resumed taking drugs upon being released.  Appellant suggests that
his current imprisonment will break that cycle.  Nevertheless, appellant’s
frequent return to drugs is a factor that the jury was entitled to consider in
evaluating J.N.H.’s best interest.  See R.R., 294 S.W.3d at 235 (giving
weight to a father’s history of alcohol abuse); see also In re U.P.,
105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on
reh’g) (countering a parent’s assertion that he had changed and that past
indiscretions should not be held against him by noting that the parent’s “track
record . . . raise[d] doubts about his ability to change”).

          After
his first son was born, appellant was arrested for possession of crack cocaine
in 2003, and he received three years’ probation in January 2004.  Although it
would have been better for his son for appellant to complete his three-year
probation, appellant never attempted to begin the probation, and after the
probation was revoked, appellant was sentenced to confinement in state jail for
ten months.  Thus, appellant was removed from having direct contact with his
son during that time.  Upon being released from confinement, appellant dealt
drugs and was again arrested for possessing crack cocaine.  Later, he was
arrested for three deadly conducts and pled guilty to those offenses.  Appellant
continued his drug use and criminal activity while E.H. was pregnant, including
committing the offense for which he is currently incarcerated.  Appellant
provides no excuse for his criminal and drug activity.  The jury could have
reasonably adjudged this evidence to be in favor of termination.  See In re
J.M., No. 02-08-00259-CV, 2009 WL 112679, at *10 (Tex. App.—Fort Worth Jan.
15, 2009, no pet.) (mem. op.) (considering a parent’s substance abuse history
in evaluating the sufficiency of the evidence to show termination was in the
child’s best interest).

          E.H
testified that appellant encouraged her to abort J.N.H. because appellant “didn’t
want to have a baby,” but appellant denied it and claimed he told her to keep
the child because he would “be there for her.”  Assuming that appellant’s
version of that story is the correct one, his inability to honor that
commitment is significant:  rather than being there for J.N.H., appellant has
not even met her; he was incarcerated about two months before she was born for
committing aggravated robbery with a deadly weapon while under the influence of
crack cocaine and heroin.  The fact that appellant has never met J.N.H.
indicates that he likely does not possess an understanding of J.N.H.’s needs
and capabilities.  See Tex. Fam. Code Ann. § 263.307(b)(12)(F).

          The
jury could have also found that appellant’s association with a gang weighed in
favor of terminating his parental rights to J.N.H.  A gang expert, Armando
Lopez, Jr., provided information on Puro Tango Blast (PTB), a gang that
appellant had joined.  Lopez explained that prisoners usually join PTB to
protect themselves from other “security threat” gangs that exist in prison. 
PTB members normally tattoo sports teams’ logos on their bodies as an
identifying marker.  To show his affiliation with PTB, appellant had tattooed several
stars on his body.[7]  Lopez testified that PTB
is not a security threat gang like other prison gangs.  In addition, members
can enter and exit the gang without committing a major crime.  Appellant
testified that he left the gang in 2009, but Lopez suggested that leaving the
gang while in prison was difficult to believe.  The jury had the discretion to
find Lopez’s testimony more credible than appellant’s testimony.  See In re
R.W., 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied).  Lopez
noted that PTB operates outside of prison and is active in dealing drugs, just
as appellant has been.  And the jury heard Calloway, the CASA volunteer, characterize
a parent’s gang membership as threatening to a child’s safety.  Thus, the jury
could have reasonably found that appellant’s PTB affiliation raises concerns about
his ability to provide J.N.H. with a safe home environment upon his release
from prison.  See Tex. Fam. Code Ann. § 263.307(b)(12)(D), (E).

          Our
evaluation of J.N.H.’s best interest also cannot disregard appellant’s failure
to do more to protect J.N.H. from the dangerous environment associated with
E.H.’s drug use.  Appellant testified that E.H. used drugs while she was
pregnant and after J.N.H. was born.  He claimed that he had asked E.H. to stop
using drugs and had asked friends known to provide her with drugs to cease doing
so.  However, when those requests proved unsuccessful, he pursued no other
protective action on behalf of J.N.H.  The jury could have reasonably weighed
this evidence in favor of terminating appellant’s parental rights.  See J.M.,
2009 WL 112679, at *7 (holding trial court could reasonably believe father knew
child’s mother used drugs while pregnant, thus neglecting to provide a safe
environment for the child).

          Appellant
admitted that he used heroin and crack cocaine in 2007 and 2008 while living
with his mother despite the fact that his fourteen-year-old sister also lived
in the house.  Moreover, appellant had friends come to his mother’s house to use
drugs with him.  Appellant recommended placing J.N.H. in his mother’s care
while he served his prison sentence.  The CASA and Department representatives
discouraged placing J.N.H. with appellant’s mother because her parenting
approach included allowing appellant to live with her and her fourteen-year-old
daughter while knowing that he was using drugs, and she did nothing to address
the endangerment that J.N.H.’s mother was inflicting on the child by using
drugs while pregnant with her.

          J.N.H.
was too young at the time of the trial to express her desire about the
termination of appellant’s parental rights, but J.N.H. had been happy and
comfortable when she was around E.H.’s cousin.  J.N.H.’s attorney ad litem
recommended termination.  J.N.H. typically feels afraid of people whom she does
not know.  Appellant has never met J.N.H., and appellant’s mother has only seen
her once or twice.

          J.N.H.
is not afraid, however, of anyone in E.H.’s cousin’s family.  In fact, J.N.H.
runs and hugs E.H.’s cousin, and J.N.H.’s time with the family involves
affection, laughing, and playing.  In addition, E.H.’s cousin had already
planned to test J.N.H. for any possible impairments and to visit a “play
therapist” who specializes in helping children who “move from house to house.” 
E.H.’s cousin agreed to send pictures of J.N.H. to the parents as long as her
address remained unknown to the parents, and once J.N.H. turned eighteen, E.H.’s
cousin would allow the parents to directly contact J.N.H. if J.N.H. wanted to
hear from them.  E.H.’s cousin committed to providing for all of J.N.H.’s
present and future needs.

          Calloway
testified that the termination of appellant’s rights is in J.N.H.’s best
interest because J.N.H. “deserves a permanent family, and she does not deserve
to be left out in limbo while [her parents] may or may not get their [lives]
together. . . .  She deserves the permanency.”  Calloway also said that it is
“very important to a child to have [a] safe feeling of belonging” and that this
goal could only be accomplished if J.N.H. is allowed to be adopted.  For the
same reasons, Calloway opined that it was not in J.N.H.’s best interest for the
court to allow supervised visitation between J.N.H. and appellant.  The jury
could have reasonably found that the testimony from E.H.’s cousin and Calloway
concerning their plans for J.N.H. supported termination of appellant’s rights.  See
Z.C., 280 S.W.3d at 477 (giving weight to ad litem’s support of
termination); see also U.P., 105 S.W.3d at 231–32 (holding, in part,
that evidence supported the trial court’s best interest finding because the
child had bonded with the foster family seeking permanent adoption).

          There
are also some facts that the jury could have weighed in favor of retaining
appellant’s parental rights.  For example, E.H. testified that there was
nothing in her personal experience with appellant that would indicate that he
would pose a risk to J.N.H.  Appellant said that he had played with his wife’s
children, had never been violent with them, and had not used or dealt drugs
around them.  Appellant’s mother testified that appellant is a “good kid” who
has never argued with her.  She testified that appellant played with his nieces
and nephews and was “real good” with his wife’s children.  Appellant’s sister
testified that appellant interacted well with her children and that she had no
concerns about him being around the children.  She said that appellant is
usually a good person, but she recognized that appellant has made bad choices.

          Considering
all of the evidence admitted at trial, however, including appellant’s extensive
criminal and drug histories, his gang affiliation, his lack of any emotional
connection with J.N.H., his inability to physically parent her for the next
several years, and the Department’s plan to provide a positive, permanent
environment for J.N.H. through adoption by E.H.’s cousin, we conclude that the
jury could have reasonably formed a firm conviction or belief that termination
of the parent-child relationship is in J.N.H’s best interest.  See Tex.
Fam. Code Ann. § 161.001(2); C.H., 89 S.W.3d at 28; Z.C., 280
S.W.3d at 475–76.  We therefore hold that the evidence is factually sufficient
to support the jury’s termination decision, and we overrule appellant’s fourth
issue.

Conclusion

          Having
overruled all of appellant’s issues, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL: 
LIVINGSTON, C.J., DAUPHINOT and WALKER, JJ.

 

DELIVERED:  November 17, 2011









[1]See Tex. R. App. P. 47.4.





[2]While appellant was
in a car with people that he knew through selling drugs, he waived a gun at another
car while chasing the car on a highway because someone in that car had “flipped
[appellant] off.”





[3]Appellant testified
that he does not recall giving money to E.H., but he said that she never asked
for money.





[4]Lishawa Jackson, a
Child Protective Services (CPS) investigator, described J.N.H.’s injuries as
the “most severe . . . [she] had seen,” although Jackson was unsure who,
between E.H. and E.H.’s girlfriend, caused them.  E.H. was convicted of child
endangerment and was sentenced to a year in state jail, and E.H.’s girlfriend
was convicted for causing bodily injury to a child and was sentenced to ten
years’ confinement.





[5]Contrary to
appellant’s testimony, E.H. testified that she stopped using heroin while
pregnant with J.N.H. but began using it again after J.N.H.’s birth.





[6]Appellant’s mother
conceded that appellant “probably” used drugs in her home and that she never
tried to stop him from doing so.  When she was asked whether it was important
to her whether appellant was using drugs in her home, appellant’s mother said,
“I don’t know what to say there.”





[7]Appellant also has a
tattoo on his neck that says, “Trust No Bitch.”