

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

NO. 2-08-025-CV

---

IN THE INTEREST OF
Z.C., C.C., L.C., AND
D.A.C., JR., CHILDREN

------------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Jeffery C. appeals the trial court's termination of his parental rights to C.C. and L.C. David C. appeals the termination of his rights to D.A.C., Jr. We affirm.

### I. Background Facts

Jeffery and his former wife Kimberly Jo C. are the parents of three children: Z.C., C.C., and L.C. Z.C. was born in 1991, C.C. was born in 1996, and L.C. in 1997. Jeffery and Kimberly divorced in 2003 and became joint

managing conservators of their three children. After Jeffery and Kimberly separated, David and Kimberly began living together. David and Kimberly are the parents of D.A.C., Jr., who was born in 2005.[1]

After a decade of referrals alleging child abuse, the Texas Department of Family and Protective Services ("DFPS") petitioned to terminate Jeffery's, Kimberly's, and David's parental rights. Following a bench trial, the trial court terminated the parental rights of all three.[2] The court terminated Jeffery's parental rights to C.C. and L.C.[3] on the following grounds:

- Jeffery had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being;

- Jeffery had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and

- termination was in the children's best interest.[4]

---

[1] David and Kimberly are also the parents of A.R.C. David's rights to A.R.C., however, were terminated before this case was instituted.

[2] The trial court terminated Kimberly's rights to C.C., L.C., and D.A.C., Jr., but she has not appealed.

[3] The trial court did not terminate any rights to Z.C., who at the time of trial was sixteen years old and a runaway.

[4] *See* Tex. Fam. Code Ann. § 161.001(1)(D),(E), (2)(Vernon 2008).

2

The trial court terminated David's parental rights to D.A.C., Jr., on the following grounds:

- David had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's emotional or physical well being;

- David had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well being;

- David had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition to terminate his parental rights; and

- termination was in the child's best interest.[5]

## II. Issues on Appeal

Jeffery and David each challenge the legal and factual sufficiency of the evidence to support the trial court's findings as to their parental rights and the trial court's appointment of a managing conservator. They also contend that the provision in section 263.405(i) of the family code that precludes us from considering issues that are not presented to the trial court in a timely filed statement of points violates federal due process and Texas due course of law protections under the United States and Texas constitutions because it deprives them of a meaningful appeal. We will address this issue first.

---

[5] *See id*. § 161.001(1)(D),(E),(Q), (2).

3

### III. Texas Family Code Section 263.405(i)

Texas Family Code Section 263.405(b) provides:

*Not later than the 15th day* after the date a final order is signed by the trial judge, a party who intends to request a new trial or appeal the order must file with the trial court:

    (1) a request for a new trial; or

    (2) if an appeal is sought, a statement of the point or points on which the party intends to appeal.[6]

Section 263.405(i) provides:

The appellate court may *not* consider any issue that was *not* specifically presented to the trial court in a *timely filed* statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial.[7]

The order terminating Jeffery and David's parental rights was signed on January 3, 2008. Thus, under section 263.405(b), appellants' statements of points were due January 18, 2008.[8] Appellants, however, filed motions to extend the time for filing the statements of points an additional five days, until January 23, 2008, which the trial court granted. The statements of points were filed on the new deadline set by the trial court with appellants' motions for new trial.

---

[6] *Id.* § 263.405(b) (Vernon 2008)(emphasis added).

[7] *Id.* § 263.405(i)(emphasis added).

[8] *Id.* § 263.405(b).

4

The Supreme Court of Texas has recently held that a trial court may properly extend the deadline for filing a statement of points on appeal, so long as the new deadline is within thirty days of the termination order and is for good cause shown.[9] The record conclusively shows that appellants filed their statements of points within thirty days of the termination orders, and the State does not challenge the trial court's order granting the extension. We, therefore, hold that appellants' statements of points were timely filed. Consequently, appellants' complaint that section 263.405(i) is unconstitutional on due process grounds is overruled as moot.

### IV.  Sufficiency of the Evidence Supporting Termination of Jeffery's and David's Parental Rights

In their first four issues, appellants contend that the evidence is legally and factually insufficient to support the trial court's findings terminating their parental rights based on family code section 161.001(1) subsections D and E. In his seventh issue, David challenges the sufficiency of the evidence supporting the termination of his parental rights based on family code section 161.001(1)(Q).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground

---

[9] *See In re M.N.*, 262 S.W.3d 799, 803–05 (Tex. 2008).

listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.[10]  Although each element must be proven independently, the same evidence may be probative of both.[11]

## A.    Standards of Review

Because of the elevated status of parental rights, the quantum of proof in a termination proceeding is elevated from the preponderance of the evidence to clear and convincing evidence.[12]  This higher burden of proof alters the appellate standard for both legal and factual sufficiency reviews.[13]  In termination cases, both standards must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof.[14]

---

[10] Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

[11] *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

[12] *Santosky v. Kramer*, 455 U.S. 745, 758–69, 102 S. Ct. 1388 (1982); *see also* Tex. Fam. Code Ann. § 161.001.

[13] *In re J.F.C.*, 96 S.W.3d 256, 265 (Tex. 2002); *C.H.*, 89 S.W.3d at 25; *In re J.T.G.*, 121 S.W.3d 117, 124 (Tex. App.—Fort Worth 2003, no pet.).

[14] *J.F.C.*, 96 S.W.3d at 265–66; *C.H.*, 89 S.W.3d at 25; *J.T.G.*, 121 S.W.3d at 124.

Accordingly, in reviewing the evidence for legal sufficiency in parental termination cases, we look at all the evidence in the light most favorable to the finding to determine whether a trier of fact reasonably could have formed a firm belief or conviction that its finding was true. In conducting our review, we must also disregard all evidence that a reasonable factfinder could have disbelieved, however, we must consider undisputed evidence even if it is contrary to the finding.[15] That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not.[16]

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own.[17] We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child as required by section 161.001(2).[18] If, in light of the entire record, the disputed evidence

---

[15] *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

[16] *Id.*

[17] *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[18] *C.H.*, 89 S.W.3d at 28.

that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.[19]

## B. Evidence Supporting Terminating Jeffery's Parental Rights Based on Family Code Section 161.001(1)(D)

Under subsection D of section 161.001(1), we examine the evidence to determine whether the parent knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being.[20] A parent's illegal drug use and drug-related criminal activity may support a finding that the child's surroundings endanger his physical or emotional well-being.[21]

Jeffery, an admitted methamphetamine addict, was the subject of multiple child-abuse referrals and investigations by DFPS during and after his marriage to Kimberly. Despite having won primary custody of the children in the divorce decree, he continued to use methamphetamine and marihuana, culminating in his arrest and conviction on drug charges.

---

[19] *H.R.M.*, 209 S.W.3d at 108.

[20] *J.T.G.*, 121 S.W.3d at 125; *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied).

[21] *J.T.G.*, 121 S.W.3d at 125.

The evidence showed that Jeffery would keep the children for a few months and then send them back to Kimberly. Once, after he had passed them off to her, she failed a drug test, gave them back to him, and he then kept them for months during the school year without enrolling them in school. He eventually returned the children to Kimberly once more, complaining that caring for them had become too stressful.

Kimberly voluntarily placed the children with Jeffery's mother in December 2006. When Jeffery learned of this, he contacted DFPS for the first time, angry that the children had been placed with his mother. He reported that he was homeless and admitted that he had a history of drug abuse, but he denied that he had used any drugs "for awhile." He refused, however, to provide any confirmation by submitting to a drug test. Jeffery's mother gave the children back to Kimberly within days of receiving them, explaining that Jeffery had threatened to burn her house down.

The children were placed in foster care in January 2007. Jeffery was still homeless, he continued to use illegal drugs, and he avoided contact with DFPS and the children for months. Although supervised visitation with the children began in March, Jeffery did not contact DFPS until late April, when in a telephone call, he insisted that he wanted to begin participating in the service plan. He admitted that he had been using illegal drugs but reported that he was

9

working and had enrolled in a substance-abuse program offered through his employer. He also admitted that he was homeless and had been deliberately avoiding the DFPS caseworker.

Jeffery visited the children once in May, but then missed the next scheduled appointment without advance notice, which upset the children greatly.

Jeffery finally secured housing in August, but the evidence showed that by November he was already behind in his rent. In September, he reported to DFPS that he was trying to begin taking steps toward complying with the service plans. But he missed a scheduled drug test in October and a visit with the children scheduled for November just before the case went to trial. Although he completed some classes and attended two counseling sessions just prior to trial, he did not complete a psychological assessment or a drug assessment until trial was well underway. Moreover, he continued to use illegal drugs after trial began, admitting to having smoked marihuana between proceedings.

We find the evidence against Jeffery legally and factually sufficient to support the trial court's endangerment findings under section 161.001(1)(D) of the family code. Jeffery's first four issues are overruled.[22]

## C. Evidence Supporting the Trial Court's Finding that Termination of Jeffery's Rights is in the Children's Best Interest

Jeffery also challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights and the appointment of DFPS as managing conservator is in the children's best interest.

Factors that the trier of fact may use in determining the best interest of the child include, but are not limited to the following:

(1)     the desires of the child;

(2)     the emotional and physical needs of the child now and in the future;

(3)     the emotional and physical danger to the child now and in the future;

(4)     the parental abilities of the individuals seeking custody;

(5)     the programs available to assist these individuals to promote the best interest of the child;

---

[22] Because the finding under section 161.001(1)(D) is enough to support a judgment of termination, we need not address Jeffery's issues regarding the trial court's findings under section 161.001(1) subsection (E). *See In re K.A.S.*, 131 S.W.3d 215, 225 (Tex. App.—Fort Worth 2004, pet. denied); Tex. R. App. P. 47.1.

11

(6)     the plans for the child by these individuals or by the agency seeking custody;

(7)     the stability of the home or proposed placement;

(8)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.[23]

We hold that there is legally and factually sufficient evidence of one or more of these best interest factors to support the trial court's findings against Jeffery.

The evidence shows that the children, having been passed back and forth between parents unable or unwilling to give up illegal drugs, experienced very little stability or permanence while in the possession of their parents. Stability and permanence are paramount in the upbringing of a child.[24] In addition, although there is evidence that the children wanted to be with their father, their ad litem supported termination. Furthermore, the evidence shows that the emotional and physical needs of the children were being better met while in foster care. The children were bonding well with others and were enrolled in

---

[23] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see C.H.*, 89 S.W.3d at 27.

[24] *See In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.— Fort Worth 2002, pet. denied).

school and improving in foster care. Jeffery, on the other hand, had the children for months during the school year without having them enrolled in school. His employment status was precarious, as was his ability to maintain stable housing. His minimal efforts to improve his ability to effectively parent on the eve of trial are not enough to overcome a decade of poor parenting and neglect.

Jeffery's issues five through eight are overruled.

**D.    Sufficiency of the Evidence to Support Terminating David's Parental Rights Based on Family Code Section 161.001(1)(Q)**

In his seventh issue, David contends that the evidence is insufficient to support termination of his parental rights under section 161.001(1)(Q). Subsection Q of section 161.001(1) provides that parental rights may be terminated if the parent has knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.[25] The Texas Supreme Court has interpreted this subsection to mean two years *after* the termination petition is filed.[26]

---

[25] Tex. Fam. Code Ann. § 161.001(1)(Q).

[26] *In re A.V.*, 113 S.W.3d 355, 356–57 (Tex. 2003).

David admitted that he committed the offense of aggravated assault on May 5, 2005. D.A.C., Jr. was born seven months later. On the issue of whether David committed the offense knowing that Kimberly was pregnant, David's testimony was contradictory. At first, he testified that he knew. Later, however, he testified that he did not remember when she got pregnant but that he did not think he knew until after the offense. Because the trial court reasonably could have found that David's first answer was more credible than his second, we defer to the trial court's resolution of this fact issue.[27]

David pleaded guilty to the aggravated assault charge and was sentenced to four years' confinement on February 13, 2006.[28] The petition to terminate his parental rights was filed on January 4, 2007. David concedes in his brief that, unless he is paroled, he will be imprisoned for more than two years from the date the petition was filed. Although he testified that he had served enough of his sentence to be parole eligible, there is no evidence that he would be released before completing the full term. David had been incarcerated most of his life. Between the ages of eighteen and forty, the longest period that he had not been incarcerated was two-and-a-half years. Both of his children were born

---

[27] *See H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *J.F.C.*, 96 S.W.3d at 265–66.

[28] The judgment credited David with 244 days' time served.

while he was in jail.  It was reasonable for the trial court to conclude that he would not be released on parole but would serve his full sentence.

David admitted that because he was incarcerated he had no present ability to care for D.A.C., Jr., but he hoped that one of his relatives could care for the child until David's release from prison.  His mother, Kay C., testified that she had cared for D.A.C., Jr., in the past, and that she had told Kimberly that she would have taken him.  The investigator, however, testified that at the time D.A.C., Jr. was removed, Kay refused to care for him any longer.  Moreover, the evidence is undisputed that, while the case was pending, Kay moved into and signed a years' lease on an assisted-living facility that excluded tenants under the age of sixty-two.

We hold that the evidence is legally and factually sufficient to support the trial court's finding that David violated section 161.001(1)(Q) of the family code.  David's seventh issue is overruled.[29]

---

[29] Because the finding under section 161.001(1)(Q) is sufficient to support a judgment of termination, we need not address David's issues regarding the trial court's findings under section 161.001(1)(D) and (E). *See* *K.A.S.*, 131 S.W.3d at 225; Tex. R. App. P. 47.1.

15

**E. Sufficiency of the Evidence Supporting the Trial Court's Finding that Termination of David's Parental Rights is in the Child's Best Interest**

There is also legally and factually sufficient evidence to support the trial court's best interest findings against David. The record shows D.A.C., Jr. had never known him. D.A.C., Jr. was born while David was incarcerated and was less than two years old at the time of trial. The only time David had seen D.A.C., Jr. was when Kimberly brought him to the jail once for a visit just after he was born. Although D.A.C., Jr. was too young to voice his desires at the time of trial, the ad litem recommended termination.

Further, David could not provide for the child's physical and emotional needs because he was currently serving a prison term, and he presented no viable options for caring for the child until after he was released. While David planned to care for D.A.C., Jr. after he gets out of prison, he had only served two-and-a-half years of a four year sentence, and there is no evidence that he will be released before serving the full term. DFPS, on the other hand, planned to keep D.A.C., Jr. and his siblings together and to fast-track their adoption into the same home.

Moreover, the evidence shows that David had virtually no parental experience or ability and that he had exposed other children to illegal drug use. He testified that during one of the brief periods when he was not incarcerated

16

and was living with Kimberly and two of her other children, he used illegal drugs in the home, resulting in his arrest for a parole violation.

Having carefully reviewed the record, we hold that it was reasonable for the trial court to form a firm conviction or belief that termination of David's parental rights and appointment of DFPS as managing conservator was in D.A.C., Jr.'s best interest.  We overrule David's issues five, six, and eight.

### V.  Jeffery's Motion for Continuance

In his ninth issue, Jeffery contends that the trial court abused its discretion by overruling his motion for continuance because his attorney announced that she had not received documentation she requested from the State and was, as a result, not ready for trial.

We review a trial court's ruling granting or denying a motion for continuance for an abuse of discretion.[30]  We do not substitute our discretion for that of the trial court.[31]  Instead, we must determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and

---

[30] *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

[31] *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding).

prejudicial error of law.[32]  The focus is on whether the trial court acted without reference to guiding rules or principles.[33]

Under Texas Rule of Civil Procedure 251, a trial court may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."[34]  Jeffery's motion was unsworn and unsupported by affidavit.  Therefore, it did not comply with rule 251, and under the plain language of the rule, the trial court was without discretion to grant it. We overrule Jeffery's ninth issue.

## VI.  Conclusion

Having overruled all dispositive issues raised by appellants, we affirm the trial court's order terminating appellants' parental rights to C.C., L.C., and D.A.C., Jr.

PER CURIAM

PANEL:  CAYCE, C.J.; LIVINGSTON, and HOLMAN, JJ.

DELIVERED:   February 12, 2009

---

[32] *Marchand*, 83 S.W.3d at 800.

[33] *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex. 1997).

[34] Tex. R. Civ. P. 251.

18