

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00499-CV

In the Interest of M.A.-O.R., the Child   §   From the 211th District Court

             §   of Denton County (2011-30228-211)

             §   February 14, 2013

             §   Opinion by Chief Justice Livingston

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Chief Justice Terrie Livingston



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00499-CV

IN THE INTEREST OF M.A.-O.R.,
THE CHILD

----------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In three issues, appellant M.L.R. (Mother) appeals the trial court's termination of her parental rights to her daughter, M.A.-O.R. (Mary).[2] Mother contends that the trial court failed to adequately admonish her about the importance of completing her service plan, that the evidence was insufficient to support the removal of Mary from her care, and that the trial court erred by denying her oral motion for a continuance of the termination trial. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]To protect her anonymity, we will use "Mary" as an alias to refer to M.A.-O.R. throughout this opinion, and we will also use an alias to refer to Mary's brother. *See* Tex. R. App. P. 9.8(b)(2).

## Background Facts

In late 2007, Mother gave birth to Mary, who has Down's syndrome, while Mother was living in Ohio. Mary requires speech therapy and physical therapy, and Mother testified at trial that Mary has received such therapy since her birth. Mother also has a son, Trent, who was approximately sixteen years old at the time of Mary's birth.

From late August 2008 (when Mary was less than a year old) until early November 2008, Mother was confined on a charge of passing a bad check. According to Trent, after Mother's arrest, he and Mary began living with their aunt and uncle. Mother received three years' probation for her theft charge in Ohio before moving to Oklahoma in May 2009 with Mary. Trent stayed in Ohio. In October 2009, an Ohio court found that mother had failed to comply with her probation because she had absconded from the state.

After Mother arrived in Oklahoma, she committed the offenses of identity theft, embezzlement of rented property, and passing bad checks.[3] Upon Mother's September 2009 arrest in Oklahoma, Mary stayed with Mother's father and stepmother. They sought guardianship of Mary, but Mother eventually

---

[3]Records introduced at trial show that Mother pled guilty to identity theft in October 2009, to embezzlement of rented property in May 2011, and to passing bad checks in June 2011. The identity theft charge stemmed from Mother's using Mary's social security number to get financial assistance. Mother eventually received probation for her identity theft charge, but she violated the terms of the probation, and an Oklahoma court revoked it and sentenced her to a term of confinement.

3

regained custody of her, and Mother and Mary moved to Texas in the fall of 2010. Trent also moved to Texas and stayed with Mother and Mary in a rental house in Providence Village. At one point in the latter part of 2010, Mother let Trent and Trent's girlfriend take Mary to Ohio for over a month.

On April 11, 2011, the police went to Mother's home because of an argument she had with Trent.[4] When the police discovered that Mother had a pending arrest warrant in Oklahoma (which Mother already knew about), they arrested her. Trent told a Child Protective Services (CPS) investigator that he had concerns about Mother's ability to meet Mary's needs, and he also said that he would not be able to care for Mary. Because Mother had been incarcerated and because CPS could not find an appropriate caregiver for Mary, it removed her from Mother's custody. Mary initially lived in foster care, but she later began living with Mother's father and stepmother again in Oklahoma, and she stayed with them until the termination trial.[5]

The day after Mary's removal, the Department of Family and Protective Services (the Department) filed a petition asking the trial court to name the Department as Mary's temporary managing conservator and to terminate Mother's parental rights to Mary if reunification could not be achieved. The

---

[4]Trent testified that during this argument, Mother hit him in the face and threw a phone at him. He stated that arguments between he and Mother occurred frequently and that Mary cried during the arguments.

[5]Upon the termination of Mother's parental rights, CPS planned on allowing Mother's father and stepmother to adopt Mary.

4

petition also included a request from the Department for the trial court to inform Mother "that parental and custodial rights and duties may be subject to restriction or to termination unless [she was] willing and able to provide [Mary] with a safe environment." Upon filing the petition, the Department also filed affidavits from two of the Department's employees about the reasons for Mary's removal. The trial court appointed the Department as Mary's temporary sole managing conservator and set an adversary hearing.[6]

On the date of the adversary hearing, Mother was still in custody in Texas for the warrant out of Oklahoma. Mother told the trial court that she had reviewed services that had been proposed for her and that she thought they were fair, and she also signed a document recognizing that she had been ordered to comply with any original or amended service plan. The trial court then told Mother,

> [The Department wants] to give your child back to you and, you know, get things straightened out and get out of your hair as fast as they can. They've got other people also. But a lot of that depends on you complying with the plan. If you don't, twelve strangers are probably going to be over here in the [jury box] deciding whether you ever get to see your kid again or not.

In May 2011, the Department filed a family service plan. The plan required Mother to perform several acts, including completing parenting classes and attending counseling sessions.

---

[6] *See* Tex. Fam. Code Ann. § 262.201(a) (West Supp. 2012).

5

Authorities eventually sent Mother to Oklahoma, and she was released from confinement there in July 2011. She returned to Texas soon thereafter. Upon Mother's release, two CPS employees spoke to her, on different dates, about the services she needed to complete. Also, a CPS employee encouraged Mother to obtain counsel. When Mother returned to Texas, she did not live near where Mary was residing. Also, according to Mother's testimony at trial, she could not take a bus to come see Mary because her driver's license had expired, and she could not ride a bus without valid identification.

Mother did not work on her service plan. At an August 2011 permanency hearing, the trial court received evidence that Mother had not been visiting Mary and had not been working on the plan although the trial court found that Mother had "been given a copy of the temporary orders with the necessary information to complete her services."

The trial court conducted a bench trial on the Department's termination petition in November 2011.[7] Mother had an outstanding arrest warrant on the day the trial began. From the time of Mary's removal in April 2011 until the trial, Mother had seen Mary only twice, with both visits occurring in September 2011. At the beginning of the trial, Mother, who was appearing pro se, orally asked for a continuance. The trial court questioned Mother about how much of the service plan she had completed, and when Mother indicated that she had not progressed

[7]Before the trial, Mary's father voluntarily relinquished his parental rights.

6

on the service plan, the trial court denied the motion for continuance "based on form and substance."

After denying the motion for continuance and hearing testimony from seven witnesses about Mother's criminal conduct, her acts toward Mary, her failure to work on services, and other matters, the trial court terminated Mother's parental rights to Mary, finding that termination was in Mary's best interest, that Mother had knowingly placed or had knowingly allowed Mary to remain in conditions or surroundings that endangered Mary's physical or emotional well-being, that Mother had engaged in conduct or had knowingly placed Mary with persons who engaged in conduct that endangered Mary's physical or emotional well-being, and that Mother had constructively abandoned Mary.[8]   Mother brought this appeal.

### The Trial Court's Admonitions Regarding the Service Plan

In her first issue, Mother contends that the trial court committed "fundamental error" and violated her right of due process by failing to fully admonish her about the importance of completing the service plan.  To support this argument, Mother relies on two sections of the family code, including section 263.006, without citing any appellate decisions that have discussed or applied those sections.  *See* Tex. Fam. Code Ann. § 263.006 (West 2008) (stating that at status and permanency hearings, the trial court must "inform each parent in open

---

[8]*See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (N), (2) (West Supp. 2012).

7

court that parental and custodial rights and duties may be subject to restriction or to termination unless the parent or parents are willing and able to provide the child with a safe environment").[9]

Mother acknowledges that during the adversary hearing soon after Mary's removal from her custody, the trial court asked her whether she had reviewed the service plan and whether she believed that any of the plan's requirements were unfair. She asserts, however, that the "trial court did not follow that line of questioning with any admonishments . . . that would impress on [her] that failure to progress [on the plan] . . . may have a negative impact on her ability to reunite with her child."

Assuming that Mother's argument is properly before us, we disagree with its factual premise.[10] As explained above, the trial court informed Mother verbally at the adversary hearing that her reunification with Mary depended on "complying

---

[9]Mother also relies on former section 263.202(c) of the family code, which required trial courts to advise parties that progress under a service plan would be reviewed at all hearings. See Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.38(b), 2005 Tex. Gen. Laws 634, 635, repealed by Act of May 27, 2011, 82nd Leg., R.S., ch. 1071, § 9, 2011 Tex. Sess. Law Serv. 2755, 2759 (West).

[10]Mother did not raise a due process complaint in the trial court. The supreme court has held that due process contentions in termination cases must be preserved in the trial court to be raised on appeal. In re L.M.I., 119 S.W.3d 707, 710–11 (Tex. 2003), cert. denied, 541 U.S. 1043 (2004); see In re U.P., 105 S.W.3d 222, 237 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) (concluding that a father in a termination case waived a due process complaint by not raising it in the trial court); see also In re M.A.P., No. 02-11-00484-CV, 2012 WL 2036457, at *19 (Tex. App.—Fort Worth June 7, 2012, no pet.) (mem. op.) ("[B]ecause Father did not assert a violation of substantive due process at trial, he waived that issue for appeal.").

with the plan" and that if Mother did not comply with it, a factfinder would determine whether she would "ever get to see [Mary] again or not." Moreover, Mother signed the trial court's temporary order following the adversary hearing. That order, just as the later-filed service plan, required Mother to attend weekly counseling; submit to random drug testing; maintain safe, stable, and appropriate housing; and maintain suitable employment. The order notified Mother that these actions were "**necessary to obtain the return of the child, and failure to fully comply with [the actions could] result in the restriction or termination of parental rights.**" Thus, we conclude that Mother received adequate notice about the importance of progressing on and completing her service plan.

Next, we agree with the Department that Mother has not established a violation of the provisions of the family code that she has cited.[11] While those provisions required the trial court, at status and permanency hearings, to advise Mother that the trial court would review progress on her service plan and that Mother's parental rights could be restricted or terminated if she did not provide Mary with a safe environment, the record does not establish that Mother attended any status or permanency hearings. And as explained above, at the one hearing other than the termination trial that Mother did attend, she was advised verbally and in writing about the relationship between completing services and obtaining Mary's return.

---

[11]Mother does not assert that the trial court violated any section of the family code other than the two sections described above.

For these reasons, we reject Mother's arguments that she did not receive adequate admonitions about the importance of completing her service plan and that the trial court denied her due process. We overrule her first issue.

## The Adequacy of the Basis for Mary's Removal

In her second issue, Mother contends that the evidence was legally and factually insufficient to support the initial removal of Mary from her care and that "[a]bsent the initial removal, . . . there would have been no service plan to complete and no final hearing."[12] Mother does not contend that the evidence at the termination trial was insufficient to support termination on the grounds expressed in the trial court's judgment.

If there is "no time to obtain a temporary restraining order or attachment before taking possession of a child consistent with the health and safety of that child, an authorized representative of the Department . . . may take possession of a child without a court order" under the conditions specified in section 262.104 of the family code. *See* Tex. Fam. Code Ann. § 262.104(a) (West 2008). On or before the first working day after the Department takes possession of a child without a court order, the trial court must review the propriety of the removal and issue an order. *See id.* §§ 262.106(a), .107(a) (West 2008). At the full adversary

---

[12]The affidavits that the Department filed on the day after Mary's removal explained, among other facts, that Mother had been confined, that she was possibly going to be extradited to Oklahoma, that Mary was at school upon Mother's arrest, that Trent believed that Mother did not appropriately care for Mary, that Trent could not care for Mary on a long-term basis while Mother was confined, and that there were no other appropriate caregivers for Mary.

hearing within fourteen days after the removal of a child from a parent's custody, the Department, to maintain custody of the child, must prove that

> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;

> (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

> (3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

*Id.* § 262.201(b); *see In re Tex. Dep't of Family & Protective Servs.*, 255 S.W.3d 613, 614 (Tex. 2008) (orig. proceeding). A trial court's decision to allow the Department to maintain custody of a child following an adversary hearing is reviewable through a petition for a writ of mandamus. *See Tex. Dep't of Family & Protective Servs.*, 255 S.W.3d at 614; *In re Allen*, 359 S.W.3d 284, 288 (Tex. App.—Texarkana 2012, orig. proceeding) (op. on reh'g); *see also In re E.D.L.*, 105 S.W.3d 679, 688 (Tex. App.—Fort Worth 2003, pet. denied) (explaining that the purpose of the adversary hearing is "to afford parents the opportunity to challenge [the Department's] right to retain any children whom [the Department] has taken into custody under an ex parte order from the court").

Mother did not challenge Mary's removal from her custody during the adversary hearing in this case, nor did she seek mandamus relief after the adversary hearing when the trial court entered its temporary order, which she

11

approved as to both form and content. The temporary order recited that an "urgent need for protection required the immediate removal of the child."

Because Mother did not, at any point in the trial court, challenge Mary's initial removal from her care; because she appeared to agree, by signing the temporary order following the adversary hearing, that there was an "urgent need" for the removal; and because the trial court's unchallenged findings supporting termination are not predicated on the propriety of the removal, we overrule Mother's challenge in her second issue to the evidentiary justification for the removal. *See* Tex. R. App. P. 33.1(a), 44.1(a); *In re E.P.C.*, 381 S.W.3d 670, 684 n.3 (Tex. App.—Fort Worth 2012, no pet.) (en banc); *Melton v. Tex. Dep't of Family & Protective Servs.*, No. 03-08-00168-CV, 2010 WL 668917, at *10 (Tex. App.—Austin Feb. 25, 2010, no pet.) (mem. op.) (holding in a termination appeal that a father did not preserve his issue related to the Department's initial temporary custody of his daughter because the father did not challenge that custody in the trial court).

## The Denial of Mother's Oral Motion for Continuance

Finally, in her third issue, Mother contends that the trial court abused its discretion by denying her oral motion for a continuance of the termination trial. Mother notes that because Mary's removal occurred in April 2011 and the trial occurred in November 2011, a continuance would not have impacted the trial

court's general duty to resolve the case within a year after Mary's removal.[13] Mother also contends that the "speedy trial in this instance . . . foreclosed any meaningful opportunity for [her] to complete the prescribed service plan."

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *In re Z.C.*, 280 S.W.3d 470, 478 (Tex. App.—Fort Worth 2009, pet. denied). Thus, we must determine whether the trial court's action in denying the continuance was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Z.C.*, 280 S.W.3d at 478. "The focus is on whether the trial court acted without reference to guiding rules or principles." *Id.*

No continuance may be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. Thus, generally, when the movant fails to provide an affidavit in support of a motion for continuance, we presume that the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 226 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 130 S. Ct. 2061 (2010); *see also Moreno v. Silva*, 316 S.W.3d 815, 817–18 (Tex. App.—Dallas 2010, pet. denied) (applying the *Villegas* presumption to a pro se litigant). Mother made an oral motion for continuance just before the termination trial began in November

---

[13]*See* Tex. Fam. Code Ann. § 263.401(a) (West 2008).

13

2011. However, the record does not contain a written motion for continuance, an affidavit, or sworn testimony in support of the motion. Because Mother did not comply with rule 251, the trial court did not abuse its discretion by denying her motion for continuance. *See Villegas*, 711 S.W.2d at 626; *see also Z.C.*, 280 S.W.3d at 478 ("Jeffery's motion was unsworn and unsupported by affidavit. Therefore, it did not comply with rule 251, and under the plain language of the rule, the trial court was without discretion to grant it."); *In re T.H.*, No. 02-07-00464-CV, 2008 WL 4831374, at *8 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.).

Moreover, at the beginning of the trial, the trial court learned that Mother had pending warrants in Oklahoma, that she would therefore be in custody for some period of time, that in the seven months from the beginning of the case, she had not progressed on the services that she agreed to complete on the date of the adversary hearing despite the Department's attempt to set up those services where she was residing, that she had exercised minimal visitation with Mary, and that she had known for two months of the November 2011 trial date but waited until the day of trial to seek a continuance. We conclude that these facts provided the trial court with a reasonable basis for denying Mother's motion and that the trial court therefore did not abuse its discretion by denying the

14

motion.[14]  *Z.C.*, 280 S.W.3d at 478.  For these reasons, we overrule Mother's third issue.

### Conclusion

Having overruled each of Mother's three issues, we affirm the trial court's judgment terminating her parental rights to Mary.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED:  February 14, 2013

---

[14]In denying the motion for continuance, the trial court stated,

There's no sense in continuing the case to do nothing while [Mother] goes back to Oklahoma and sits in jail for who knows how long, so I'm going to deny . . . the motion for continuance.  If we're going to gain something by doing a continuance, that might be a good option, but here it doesn't look like we're going to gain anything by doing a continuance.