

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00080-CV

**IN THE INTEREST OF G.M.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00686
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Sandee Bryan Marion, Chief Justice
Concurring Opinion by: Beth Watkins, Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Beth Watkins, Justice

Delivered and Filed: July 31, 2019

AFFIRMED

F.M. appeals the trial court's order terminating his parental rights to G.M. The only issue presented on appeal is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in G.M.'s best interest. We affirm the trial court's order.

### BACKGROUND

On April 4, 2018, the Texas Department of Family and Protective Services filed a petition to terminate F.M.'s parental rights to G.M. On January 15, 2019, a bench trial was held. At the time of the trial, G.M. was five years old. The trial court terminated F.M.'s parental rights, and he appeals.

**STANDARD OF REVIEW AND STATUTORY REQUIREMENTS**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following three predicate grounds under subsection 161.001(b)(1) to terminate F.M.'s parental rights: (1) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the child's physical or emotional well-being; (2) failed to comply with a court-ordered service plan; and (3) used a controlled substance in a manner that endangered the health or safety of the child and failed to complete a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(E), (O), (P); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (noting evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the child's best interest). The trial court also found clear and convincing evidence that terminating F.M.'s parental rights was in G.M.'s best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

**BEST INTEREST FINDING**

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors

include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

G.M. was removed from F.M.'s care after a shelter's surveillance video captured F.M. physically abusing G.M. in the lobby of the shelter.[1] The videotape shows F.M. repeatedly hitting G.M. on his bottom, his back, and the back of his head causing G.M. to fall to the floor. F.M. continued hitting G.M. after he fell to the floor until F.M.'s girlfriend intervened. When F.M.'s girlfriend intervened, F.M. pushed her and started yelling at her.

G.M. is too young to express his desires; however, the Department's caseworker testified G.M. shows fear of F.M. G.M. does not want the caseworker to tell F.M. if G.M. gets in trouble at school or has a bad grade.

---

[1] During trial, the trial court states on the record, "I'm overruling the objection, but I may end it early just because for the prejudicial value." As the video is being played in open court, the trial court also states, "Make a note for the record, Elva [name of the court reporter], that we're watching the video that's been offered as State's Exhibit 1." Finally, at the conclusion of the playing of the video, the trial court states, "Very well. The Court has seen the video."

F.M. was discharged from his first domestic violence classes for excessive absences. He re-enrolled in classes in October of 2018 and had completed seven of the fourteen classes. The caseworker does not believe F.M. is meeting the goals of the classes because F.M.'s girlfriend continues to report to the caseworker that F.M. is abusive to her.[2] *See In re T.L.B. Jr.*, No. 01-16-00806-CV, 2017 WL 1019520, at *11 (Tex. App.—Houston [1st Dist.] Mar. 16, 2017, no pet.) (mem. op.) (noting evidence of domestic violence is supportive of a trial court's best-interest finding). In addition, during one of F.M.'s visits with G.M. in October of 2018, F.M. began yelling at the monitor resulting in two other Department workers and security intervening and ending the visit. G.M. began crying and shaking, and one of the Department workers testified the visit was traumatic for G.M. The caseworker also testified G.M. has been adversely affected by the domestic violence, noting he engages in aggressive and abusive behaviors with other children. G.M. is in therapy to address these behaviors.

F.M. was referred for parenting classes in June of 2018 but only began classes the week before trial. Although F.M. testified the classes did not have any openings until that time, the caseworker testified she had several other parents who had started and completed the classes during that period of time. *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.)

---

[2] The record reflects the following:

> A .... He is engaged in therapy, but he is not honest with the therapist regarding his relationship with [F.M.'s girlfriend]. He tells her that it is a good relationship, but I get text messages and phone calls from her —
>
> [F.M.'s attorney]: I'm going to object, Your Honor, to hearsay.
>
> THE COURT: Let's move on. It's getting a little narrative, too. So it's sustained. Question, please.
>
> Q [Department's attorney]: You said you had got some calls and text messages. Without telling what the text messages are, who are the text messages from?
>
> A From [F.M.'s girlfriend].
>
> Q And have you spoken with the father about these text messages?
>
> A I have.
>
> Q And what have you told him about them?
>
> A I told him that it was concerning that he is still being abusive with her, and even though he's in therapy and supposedly engaged in domestic violence classes.

(noting failure to comply with family service plan supports a finding that termination is in the best interest of the child).

F.M. was referred for individual therapy in May of 2018; however, the counseling center was unable to contact F.M. to schedule an appointment because he did not have a stable phone number. After that referral expired in August, the Department sent another referral in September, and F.M. began therapy in October. Although F.M. stated he went to therapy on a weekly basis, the caseworker testified F.M. attended therapy twice a month. The caseworker did not believe F.M. was being honest with the therapist about his relationship with his girlfriend because he told the therapist the relationship was good while his girlfriend reported ongoing abuse.

In November of 2018, F.M. tested positive for marijuana and was referred to drug treatment. At trial, F.M. admitted he had not started the drug treatment. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child).

F.M. was living with his mother; however, the caseworker had not visited the home. Initially, F.M. refused to provide the caseworker with his mother's address because he stated she did not want any involvement with the Department. F.M. subsequently told the caseworker his mother's home was not appropriate for G.M. because it was dirty and his mother uses drugs. At trial, F.M. testified G.M. would be able to stay with him at his mother's house. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting parent's inability to provide a stable home supports a finding that termination is in the best interest of the child).

G.M. is placed with fictive kin. The caseworker testified the placement will likely lead to permanency and adoption. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (noting stability and permanence are important to upbringing of a child and affirming finding that termination was in child's best interest when child was thriving in current placement).

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating F.M.'s parental rights was in G.M.'s best interest.

## CONCLUSION

The order of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice