

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00651-CV

**IN THE INTEREST OF A.B.S.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA01300
Honorable Richard Garcia, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: February 19, 2020

AFFIRMED

R.O. appeals the trial court's order terminating her parental rights to A.B.S.  The sole issue presented on appeal is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in A.B.S.'s best interest.[1]  We affirm the trial court's order.

### BACKGROUND

On June 15, 2018, the Texas Department of Family and Protective Services filed a petition to terminate R.O.'s parental rights to A.B.S.  On August 2 and 29, 2019, a bench trial was held. The trial court terminated R.O.'s parental rights, and she appeals.

---

[1] R.O. also contends that if "the trial court's termination order is reversed on appeal, the trial court's conservatorship order should also be reconsidered."

**STANDARD OF REVIEW AND STATUTORY REQUIREMENTS**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following four predicate grounds under subsection 161.001(b)(1) to terminate R.O.'s parental rights: (1) knowingly placed or knowingly allowed A.B.S. to remain in conditions or surroundings which endangered her physical and emotional well-being; (2) engaged in conduct or knowingly placed A.B.S. with persons who engaged in conduct which endangered her physical or emotional well-being; (3) had her parent-child relationship terminated with respect to another child based on a finding that her conduct was in violation of subsection 161.001(b)(1)(D) or (E) of the Texas Family Code, or a substantially equivalent provision of the law of another state; and (4) failed to comply with the provisions of a court order establishing the actions necessary to obtain A.B.S.'s return. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (M), (O); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (noting evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the child's best interest). The trial court also found clear and convincing evidence that terminating R.O.'s parental rights was in A.B.S.'s best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

**BEST INTEREST FINDING**

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

A.B.S. was removed from R.O.'s care on June 15, 2018, when she was seven months old. Two months before A.B.S.'s removal, R.O.s' rights were terminated to five of her other children, and A.B.S.'s father, A.S., was the father of two of those children. The order terminating R.O.'s parental rights to those children was admitted as evidence. R.O.'s rights were terminated under subsections 161.001(b)(1)(D), (E), and (P),[2] and R.O. testified the termination was due to domestic violence between A.S. and her.

---

[2] As previously noted, R.O.'s rights to A.B.S. were also terminated under subsections 161.001(b)(1)(D) and (E). Subsection 161.001(b)(1)(P) relates to the use of a controlled substance, and the Department's caseworker testified drug use by R.O. was not a concern in the instant case.

At the time of trial, A.B.S. was almost two years old and too young to express her desires. However, A.B.S. lived with the same foster family since her removal, and the Department's caseworker and A.B.S.'s foster mother testified regarding the strong bond that exists between A.B.S. and her foster family. *In re M.D.M.*, 579 S.W.3d 744, 770 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("Evidence that a child is well-cared for by a foster family or a proposed adoptive placement, is bonded to the proposed placement, and has spent minimal time in the presence of the child's parent is relevant to the best interest determination and, specifically, is relevant to the child's desires.").

A.B.S.'s occupational therapist testified A.B.S. is developmentally delayed due to sensory issues and described A.B.S. as a special needs child in need of elevated parenting. A.B.S.'s foster mother, who has a background in nursing, first identified A.B.S.'s sensory issues and requested the occupational therapy. Because of her sensory issues, a regular, consistent routine and a calm environment with minimal distractions and extraneous stimuli are important for A.B.S.'s development. A.B.S. is progressing in therapy, but her sensory issues are ongoing. A.B.S.'s occupational therapist testified that experiencing trauma, such as domestic violence, contributes to a child's sensory issues and would cause any progress to relapse.

Prior to A.B.S.'s removal, the Department developed a safety plan for A.B.S. The Department's caseworker testified one of the issues requiring a safety plan was domestic violence. When the safety plan was implemented, R.O. was living at her mother's apartment, and the manager of the apartment complex agreed to be a part of the safety plan which required no contact with A.S. The day after the safety plan was implemented, A.S. was seen with R.O. at the complex, and one of employees of the complex, who knew about the terms of the safety plan, reported A.S.'s presence to the Department. R.O. denied violating the safety plan and stated the Department failed to tell A.S. he was not allowed to return to the complex.

When asked about the reason A.B.S. was removed from her care, R.O. testified she got into a fight with her little brother, and the Department removed A.B.S. the following day based on its belief that she was involved in an altercation with A.S. R.O. admitted, however, that A.S. was arrested for assaulting her.

On June 20, 2019, R.O. was involved in a fight with the mother of another of A.S.'s children. R.O. was four or five months pregnant at that time with another child fathered by A.S.

Around July 4, 2019, while living at her mother's apartment, R.O. was a witness to a crime when a person kicked in the door to another resident's apartment. The next day, R.O. was a witness to a second crime when someone shot at the other resident's apartment. R.O. denied being present at the other resident's apartment at the time of the shooting; however, the manager of the apartment complex testified R.O. was inside the apartment at the time of the shooting. A.S. was also present on both days.

Although A.S. abused R.O., the evidence established she continued to be in an ongoing relationship with him. *See In re K.S.O.B.*, No. 01-18-00860-CV, 2019 WL 1246348, at *24 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) ("The children's exposure to domestic violence in the home undermines the safety of the home environment and is relevant in determining the best interest of the children."). On August 15, 2019, which was two weeks before the second day of trial, A.S. drove R.O. to her visit with A.B.S. A week before the second day of trial, R.O. prematurely gave birth to another baby, and A.S. is the father of the baby. Although the baby remained hospitalized, R.O. was released from the hospital two days after the birth. The Department's investigator for the baby's case saw R.O. and A.S. together at the hospital, and the hospital reported additional concerns regarding A.S. to the Department.

R.O.'s counselor testified R.O. has not been successful in her treatment plan or in reaching her treatment goals, which included maintaining financial stability and a stable home and learning

appropriate parenting skills. R.O. began treatment with the counselor on January 15, 2019. Although R.O. estimated she missed five appointments due to medical issues relating to her pregnancy and transportation issues, the counselor testified R.O. had eight no-shows in sixteen or seventeen appointments. R.O.'s last appointment was on June 7, 2019, almost two months before trial. The counselor had concerns about whether R.O. understood the impact of domestic violence on herself and on her children. The counselor did not believe R.O. would be a safe and protective parent of A.B.S. At trial, R.O. testified she did not consider A.S. to be a threat to A.B.S.

The Department's caseworker testified R.O. had not completed her service plan, which required R.O. to maintain stable housing and employment and complete counseling. *In re J.L.C.*, 582 S.W.3d 421, 432-33 (Tex. App.—Amarillo 2018, pet. denied) (noting parent's inability to provide a stable home and failure to comply with service plan support a finding that termination is in the child's best interest). On the first day of trial, R.O. testified she was renting an RV in New Braunfels; however, she could not provide a lot number because she had only been living there a week. After the first day of trial, the Department's caseworker attempted to find the RV park where R.O. stated she lived, but no RV park was located at the address R.O. provided to the court.

A.B.S.'s foster family wants to adopt A.B.S., and A.B.S.'s foster mother testified about the family's extensive support network. She further testified she quit her job in nursing to stay home and meet A.B.S.'s needs. A.B.S.'s occupational therapist has observed A.B.S.'s interactions with her foster parents and believes they are dedicated to meeting A.B.S.'s needs. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (noting stability and permanence are important to upbringing of a child and affirming finding that termination was in child's best interest when child was thriving in current placement).

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating R.O.'s parental rights was in A.B.S.'s best interest.

## CONCLUSION

The order of the trial court is affirmed.

Liza A. Rodriguez, Justice