

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00129-CV

**IN THE INTEREST OF E.J.E.**, J.J.E., J.N.E., and L.A.E., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA00935
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Irene Rios, Justice

Sitting:      Karen Angelini, Justice
             Marialyn Barnard, Justice
             Irene Rios, Justice

Delivered and Filed:  August 2, 2017

AFFIRMED

A.E., the mother of J.J.E., J.N.E., and L.A.E., appeals the trial court's order terminating her parental rights.[1]  A.E. contends the evidence is insufficient to support's the trial court's finding that termination of her parental rights was in the best interest of the children.  We affirm the trial court's order.

### BACKGROUND

The Texas Department of Family and Protective Services filed its original petition to terminate A.E.'s parental rights on May 3, 2016.  A bench trial on the merits was held on February 16, 2017.  At that time, J.J.E. was fifteen, J.N.E. was thirteen, and L.A.E. was eight.

---

[1] A.E.'s parental rights to E.J.E., who was almost eighteen, were not terminated, and any references in this appeal to the "children" include only J.J.E., J.N.E., and L.A.E.  The father's parental rights were also terminated, but he did not appeal.

Pamela Grover, the Department's investigator, was the first witness to testify. She stated the initial referral was for a dirty house and suspected drug use. Upon arriving outside the home, Grover smelled a strong odor of feces. Upon entering the home, Grover observed trash, dirty diapers, and used feminine hygiene products on the floor scattered throughout the home. The home had no running water. The bathroom had a bucket containing feces, and Grover also observed feces smeared on the door. When Grover performed a drug test on the parents, J.E., the children's father, testified positive for marijuana, opiates, methamphetamines, and cocaine. A.E.'s drug test was also positive for opiates. Both J.E. and A.E. denied any drug use.

The Department implemented a parental child safety placement and placed the children with their paternal grandparents. On a random visit, however, the grandmother stated the children were with the parents despite the grandmother acknowledging her understanding that visits were supposed to be supervised. The children were then removed and placed in the Department's care.

Grover determined the children had not attended school in almost a year. Grover further testified the children's medical needs were not being met, and the parents did not have some of the children's prescribed medications. J.J.E. was diagnosed with diabetes, but the parents admitted they only gave her the prescribed medication occasionally, not regularly. While the children were in the Department's care, Grover discovered the children had additional medical needs that were not being addressed.

Jennifer Saldana, the Department's caseworker, testified both parents were given a service plan. A.E. was first required to undertake a drug assessment. When Saldana met A.E. at the drug testing facility, A.E. was inebriated and unable to stand. The facility attempted an oral swab test, but the results were invalid. Based on A.E.'s demeanor, the facility was unable to complete the test. A.E. completed a psychological assessment and was referred to counseling; however, she only attended one counseling session because her health deteriorated after she skipped her dialysis

treatments. After A.E.'s health improved and she obtained stable housing in November, she was provided in-home counseling and began to engage in therapy in December. Unlike the prior housing, Saldana stated she did not have any concerns about the housing A.E. had lived in since November.

On one occasion when Saldana went to pick A.E. up to transport her for a hair follicle drug test, A.E. was barely able to walk to the vehicle because she skipped her dialysis treatments for the entire week. A.E. passed out in Saldana's vehicle, and Saldana called 911. Saldana attempted to revive A.E. until EMS arrived and transported A.E. to the hospital. Saldana testified the dialysis treatment facility provided A.E. with transportation for services. A.E. simply chose not to go to the facility to receive treatments.

Saldana testified A.E. was arrested on a warrant while the case was pending. Saldana further testified J.E. has outstanding warrants. With regard to A.E.'s relationship with J.E., Saldana testified A.E. represented they were no longer in a relationship; however, when Saldana visited the home, J.E. was present. In addition, on the last parent-child visit preceding trial, A.E. requested that the children be permitted to attend a ceremony on Valentine's Day where she and J.E. would renew their vows. Saldana testified a history of domestic violence exists between A.E. and J.E., including an incident at the beginning of the case when J.E. admittedly hit A.E. causing bruising under her chin. Neither A.E. nor J.E. completed a domestic violence course.

J.E. completed two drug assessments but failed to follow through with recommendations for treatment. The Friday before trial began, Saldana made an unannounced home visit at A.E.'s residence. J.E. informed Saldana that A.E. was not home because she was hospitalized the previous night for skipping dialysis. Saldana testified A.E. had been hospitalized four times while the case was pending. J.E. submitted to an oral swab drug test and passed out waiting for the results. The drug test was positive for cocaine.

Saldana testified J.J.E. is diabetic and requires regular medication. J.N.E. also had several medical concerns when he was placed in the Department's care, including high blood pressure for which he takes medication. Saldana expressed a concern about A.E.'s ability to follow through with the children's medical care when she does not attend to her own medical care. When E.J.E. was placed in the Department's care, she was still bedwetting despite being sixteen. Within a month of an appointment with a urologist and bladder training, E.J.E. was able to stop bedwetting. While in her parent's care, E.J.E. was addressing the issue by wearing pull-ups. The three older children all have issues with obesity but had lost weight while in the Department's care.

With regard to the Department's permanency plans, Saldana testified the plan for E.J.E. would be to appoint the Department as the managing conservator without terminating the parents' rights. E.J.E. has plans to attend school and had been placed on a waiting list for assisted living facilities. The Department also plans to be appointed as managing conservator of J.J.E.; however, she is open to adoption by a relative. The plan for J.N.E. and L.A.E. is adoption by a relative after the parent's rights are terminated. The children's paternal great aunt and her husband expressed a desire to adopt J.J.E., J.N.E., and L.A.E. and passed a preliminary background check. Saldana testified their home is appropriate for placement and the Department was in the process of conducting a full home study on them.

Since the children have been in the Department's care, they have consistently attended school, and their educational needs are being better met. Saldana testified it was in the younger three children's best interest for their parents' rights to be terminated.

Saldana stated the children have monthly visits with their parents, and the children are bonded with them. In particular, Saldana testified J.N.E. misses his parents and wants to live with them.

A.E. testified J.E. punched her in the face after the first hearing involving the Department. A.E. stated she was no longer in a relationship with him, and he was not supposed to be at her home when Saldana visited.

J.E. was arrested for DWI in September after he crashed into a ditch. A.E. acknowledged J.E. had several outstanding warrants, including a warrant relating to drugs, for evading arrest, and for theft-by-check.

A.E. admitted she had been hospitalized approximately five times since the children were placed in the Department's care, but stated the hospitalizations were not due to missed dialysis. She stated her mother-in-law and sister-in-law will assist her with her medical care by driving her to dialysis.

With regard to counseling, A.E. testified she could not attend the counseling that was first scheduled because the facility did not have a ramp. In addition, after she was able to obtain counseling, the counselor cancelled two appointments. A.E. stated she had completed her parenting classes and her psychological assessment, but had not completed the domestic violence class. A.E. was told she was not able to attend the drug treatment classes because of her medical condition.

A.E. stated the children did not attend school while in her care because they were homeless. She testified that if the children were returned to her care, she would ensure they attended school and went to their medical appointments.

Lorraine Santos, A.E.'s sister-in-law, testified she would assist A.E. in caring for herself and the children. Santos testified J.E. was not living with A.E. but was not sure how long he had been gone. Santos stated her mother and A.E.'s sister would also help A.E.

After hearing the foregoing testimony, the trial court verbally pronounced its ruling that A.E.'s parental rights to J.J.E., J.N.E., and L.A.E. were terminated. The trial court signed a written termination order on March 28, 2017. A.E. appeals.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

In conducting a factual sufficiency review of a trial court's order terminating parental rights, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "In reviewing termination findings for factual sufficiency, a court of appeals must give due deference to a [factfinder's] factfindings and should not supplant the [factfinder's] judgment with its own." *In*

- 6 -

*re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (internal citations omitted). The evidence is only factually insufficient if "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" about the truth of the State's allegations. *In re J.F.C.*, 96 S.W.3d at 266. "The trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

## PREDICATE FINDINGS

A.E. does not challenge the sufficiency of the evidence to support the predicate statutory grounds for terminating her parental rights. Evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

The trial court found by clear and convincing evidence that A.E.: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; and (2) failed to comply with the provisions of a court order specifically establishing the actions necessary for her to obtain the return of the children.

## BEST INTEREST FINDING

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016).

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors

include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *Id.*

Although the children are bonded with A.E., A.E. was unable to care for their medical needs. Both J.J.E. and J.N.E. had medical conditions that needed regular medication, and the children were not receiving their medication. In addition, A.E. did not seek medical attention for E.J.E.'s bedwetting condition and instead used pull-ups to treat the condition. Upon receiving proper medical attention, the condition resolved itself in one month. In addition to the children's medical care, A.E. did not properly address her own medical care, resulting in frequent hospitalizations. Although A.E. and her sister-in-law testified A.E. would properly address her medical care in the future, A.E. was hospitalized as recently as the Friday before trial began. Finally, the children had not attended school for an entire year before they were placed in the Department's care.

A.E. and J.E. had a history of domestic violence, and A.E. had not taken any classes to address that issue. *See In re T.L.B. Jr.*, No. 01–16–00806–CV, 2017 WL 1019520, at *11 (Tex. App.—Houston [1st Dist.] Mar. 16, 2017, no pet.) (mem. op.) (noting evidence of domestic violence in the home even if not directed at the child is supportive of a trial court's best-interest finding). Although A.E. testified she ended the relationship with J.E., A.E. informed the children of her intentions to renew her vows with J.E. during the last visit she had with the children prior to trial. In addition, J.E. was present at the home during Saldana's unannounced visit the Friday before trial and tested positive for cocaine.

A.E. had not completed her service plan. *See In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (noting failure to comply with family service plan supports a finding that termination is in the best interest of the child). Although A.E. sought to implicate the Department's failure to accommodate her with services, the Department arranged for in-home counseling as soon as A.E. had stable housing. In addition, A.E. tested positive for drugs the day the children were removed. A.E. was unable, however, to complete drug testing at one facility because of her inebriated condition, and was unable to be transported for a hair follicle drug test on another occasion because she skipped dialysis and passed out in Saldana's vehicle. A.E. also admitted she had not completed her domestic violence class.

The Department was conducting a home study on a relative who wanted to adopt J.J.E., J.N.E., and L.A.E. The children's medical conditions had improved while in the Department's care, and the children were consistently attending school. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (relying on evidence of children's improvement in foster care to support best interest finding).

As previously noted, A.E. failed to care for the medical needs of herself and the children, and the children had not attended school in a year while in A.E.'s care. In addition, the trial court

could disbelieve that A.E.'s relationship with J.E. had ended, and instead believe A.E. continued to maintain a relationship with J.E. who used drugs, had outstanding warrants, and physically abused her. Finally, A.E. allowed the children to live in a home full of feces and trash and without running water until the Department removed them from her care.

Having reviewed the record, we hold the evidence is sufficient to support the trial court's finding that termination of A.E.'s parental rights was in the children's best interest.

## CONCLUSION

The order of the trial court is affirmed.

Irene Rios, Justice