

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00095-CV

## IN THE INTEREST OF A.E.T. AND A.D.T., CHILDREN

**From the County Court at Law
Ellis County, Texas
Trial Court No. 97412CCL**

## MEMORANDUM OPINION

Brian T. appeals from a judgment that terminated his parental rights to his children, A.E.T. and A.D.T.[1]  *See* TEX. FAM. CODE ANN. § 161.001.  In six issues, Brian complains that the evidence was legally and factually insufficient for the trial court to have found the five predicate acts upon which the termination was based to be true (Issues One through Five) and that termination was in the best interest of the children (Issue Six).  Because we find that the evidence was legally and factually sufficient as to

---

[1] The parental rights of the mother of the children were terminated in an interlocutory order prior to the final trial.  The mother did not appeal the termination.

Section 161.001(b)(1)(E) and the best interest finding, we affirm the judgment of the trial court.[2]

STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in termination cases are well established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not

---

[2] On May 17, 2019, the Texas Supreme Court issued a ruling in *In re N.G.* that requires this Court to address the sufficiency of the evidence relating to Section 161.001 (b)(1)(D) or (E) if those issues are raised in an appeal of a termination of parental rights. *See In re N.G.*, _____ S.W.3d _____, 2019 Tex. LEXIS 465 (Tex. 2019) (per curiam). Therefore, we will address Section 161.001(b)(1)(E) in our analysis.

reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam). We may not second-guess the factfinder's resolution of a factual dispute by relying on disputed evidence or evidence the factfinder "could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

**FAMILY CODE SECTION 161.001(b)(1)(E)**

In his second issue, Brian challenges the legal and factual sufficiency of the evidence to support the trial court's findings regarding the predicate act listed in subsection 161.001(b)(1)(E) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West 2014). Subsection (E) permits termination when clear and convincing evidence shows that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West 2014). Within the context of subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

It is not necessary to establish that a parent intended to endanger a child in order to support termination of the parent-child relationship under subsection (E). *See In re M.C.*, 917 S.W.2d at 270. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533.

Endangerment contemplates a voluntary, deliberate, and conscious course of conduct by the parent. *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Endangerment can occur through both acts and omissions." *Phillips v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.). The statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the parent's conduct endangers the well-being of the child. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Actions and inactions occurring both before and after a child's birth can be considered to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex. App.—El Paso 2012, no pet.). A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

A parent's use of illegal drugs, and its effect on his or her ability to parent, may qualify as endangering conduct. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Illegal drug use may support termination under subsection (E) because it exposes the child to

the possibility that the parent may be impaired or imprisoned. *Walker*, 312 S.W.3d at 617-18 (upholding termination of parental rights despite there being no direct evidence of parent's continued drug use actually injuring child).

Additionally, a parent's criminal conduct and imprisonment are relevant to the question of whether the parent engaged in a course of conduct that endangered the well-being of the child. *In re S.R.*, 452 S.W.3d at 360-61. Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533-34. Routinely subjecting a child to the probability the child will be left alone because his parent is in jail endangers the child's physical and emotional well-being. *In re S.M.*, 389 S.W.3d at 492.

A.E.T. was four years old and A.D.T. was three years old at the time of the termination trial. Brian was married to the mother of A.E.T. and A.D.T. prior to their birth. For the first year or two of their lives, the parents lived together and Brian participated in their care and upbringing. There were referrals to the Department when each child was born due to a prior termination of parental rights of the mother, L.T., to another child; however, A.E.T. and A.D.T. were allowed to remain with their parents. L.T. had a history of domestic violence, drug use, and mental health issues. Sometime in 2016, Brian left the home when he and L.T. began having marital problems. Brian lost his job and became homeless. Brian left the children with L.T., who went to reside with L.T.'s mother and a man who L.T. considered to be like a grandfather.

The children were placed with a family friend temporarily pursuant to a safety plan in August of 2017 due to drug and alcohol use by L.T. and her mother. The Department decided to seek temporary managing conservatorship of the children in October of 2017. Around that same time, the placement of the children had to be changed. The children were ultimately placed with D.T. and M.T., a paternal aunt and uncle of Brian, where they remained throughout the proceedings.

A special investigator of the Department was able to locate Brian in late October of 2017 when the investigator found L.T. panhandling in Dallas on a street corner. Brian was panhandling nearby. Brian and L.T. were staying together at this time. The investigator spoke with Brian about the children and Brian agreed to participate in services so that he could have a relationship with the children. L.T. and Brian agreed with placing the children with D.T. and M.T. Brian admitted to having recently used heroin that day and that he would be needing more soon. Brian also admitted to using cocaine and marijuana previously.

Brian had an extensive past history with heroin. He had been using heroin off and on for approximately sixteen years prior to the termination. Brian claimed to have been clean during the time after the children were born until he left in 2016 and for approximately a month prior to his arrest in November of 2017.

In November of 2017, Brian was arrested for and later convicted of the offense of conspiracy to transport undocumented aliens within the United States and transporting

and attempting to transport undocumented aliens for financial gain. The undocumented aliens included children. He was sentenced to two years in federal prison, and claimed at trial that he was due to be released to a halfway house in May of 2019, and fully released from incarceration in July of 2019. Brian had also been convicted in 2006 and 2007 for separate instances of theft of property and was placed on community supervision. Brian violated his community supervision and his terms and conditions were amended and ultimately revoked due to drug use. Brian was also convicted in 2012 for theft of property with two prior convictions. Brian testified that the thefts were committed for the purpose of purchasing heroin.

Brian was also believed to be a member of a gang based off of his Facebook profile, which alludes to the gang name and contains a picture of him allegedly throwing a gang sign that was posted to his profile taken during his federal time and at the federal prison camp.

Brian argues that because he was not involved in the children's lives at the time of their removal that he did not endanger the children through his drug use, criminal activity, gang involvement, and incarceration. We disagree. Given the record, we conclude that the evidence of Brian's drug use, criminal activity to support his drug habit which included illegally trafficking adults and children after he was aware of the Department's concerns regarding the children, his ongoing gang affiliation, and incarceration, viewed in the light most favorable to the subsection (E) finding, was

sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that Brian engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the subsection (E) finding or was not so significant that the factfinder could not reasonably have formed a firm belief or conviction that the elements of subsection (E) were shown. Accordingly, we hold that the evidence was legally and factually sufficient to support the subsection (E) finding. We overrule issue two.

Because there is sufficient evidence of subsection (E), we need not address Brian's issues one, three, four, or five which challenge the sufficiency of the evidence to support the trial court's predicate findings under subsections (D), (N), (O), and (P). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

**BEST INTEREST OF THE CHILDREN**

In his sixth issue, Brian argues that the evidence was legally and factually insufficient for the trial court to have found that termination was in the children's best interest. In *Holley v. Adams*, the Supreme Court of Texas identified various factors that courts may consider when determining the best interest of the child. *Holley v. Adams*, 544

S.W.2d 367, 371-72 (Tex. 1976). The list is not exhaustive, and a court need not have evidence on every element in order to make a valid finding as to the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *In re C.H.*, 89 S.W.3d at 28.

While the children were not old enough to express their desires, they were doing well in their placement with D.T. and M.T. Both children have exhibited some emotional behaviors which led to them being psychologically evaluated and placed in therapy. It was believed that their unstable background had led to some of those issues. D.T. and M.T. were committed to keeping the children with them and wanted to adopt them. D.T. and M.T. indicated that they are willing to continue with whatever needs the children have or will have in the future regardless of the outcome of the termination proceeding, but both believe strongly that the termination was best for the children. The children were happy and thriving with D.T. and M.T. and were bonded with them. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (stating that stability and permanence are important to upbringing of a child and affirming finding that termination was in child's best interest when child was thriving in foster placement).

Brian alleged that he had a job he could get in Mesquite after he is released from the halfway house in July of 2019, but did not have any plans for a residence or way to establish a relationship with the children. He had called D.T. approximately six times during the proceedings but did not ask if he could speak with the children and only inquired in a "cursory" manner about the children when he called. He did not send any cards, gifts, or letters to the children. Prior to the removal of the children, he had not seen them for some time after he chose to leave the home. Brian was not asking for the children to be returned to him but simply for his rights not to be terminated, which D.T. and M.T., the Department, the CASA representative serving as the children's guardian ad litem, and the attorney ad litem for the children all expressed would subject the children to uncertainty and instability, which was not in the best interest of the children.

Brian claimed to be drug-free while he was incarcerated and was hopeful that he would remain so after his release, but did recognize that a relapse was possible. Evidence of a parent's past pattern of drug use is relevant not only to the stability of the home that a parent can provide, but it is relevant to the emotional and physical needs of the children now and in the future and to the emotional and physical danger in which they could be placed now and in the future. *See Holley*, 544 S.W.2d at 371-72. A parent's drug use is a condition indicative of instability in the home environment because it exposes children to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Brian had participated in his service plan by completing three parenting packets, but otherwise did not start or substantially complete any of his services, which he claimed was due to the lack of availability at the federal prison camp where he was staying. However, his incarceration due to his own criminal behavior that he committed after he knew of the Department's involvement with his children makes the fault for the inability to complete services rest in large part on Brian.

After viewing all of the evidence in the light most favorable to the findings regarding the best interest of the children, we conclude that the evidence was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that termination of the parent-child relationship between Brian and the children was in the children's best interest. We also conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's findings that termination of the parent-child relationship between Brian and the children was in the children's best interest or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. Therefore, after considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's findings that termination of the parent-child relationship between Brian and the children, A.E.T. and A.D.T., was in the children's best interest. We overrule Brian's sixth issue.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


                              TOM GRAY
                              Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Neill
Affirmed
Opinion delivered and filed June 19, 2019
[CV06]

