

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00439-CV

**IN THE INTEREST OF S.G.**

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-PA-01516
Honorable Raul Perales, Judge Presiding

Opinion by:   Adrian A. Spears II, Justice

Sitting:   Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice

Delivered and Filed: November 19, 2025

AFFIRMED

Madison G.[1] appeals the trial court's order terminating her parental rights to her son S.G. On appeal, she contends the evidence is legally and factually insufficient to support the trial court's findings that (1) her rights should be terminated on subsections D, E, and O grounds; and (2) termination of her rights is in the best interest of S.G. *See* TEX. FAM. CODE § 161.001(b)(1). Finally, she argues the trial court erred in making its conservatorship finding because its termination order was based on insufficient evidence. Because we hold the evidence was both legally and factually sufficient to support the above findings of the trial court, we affirm the trial court's order.

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

The issues of law presented by this appeal are settled, and the background facts are well-known to both parties. *See* TEX. R. APP. P. 47.4. Therefore, we only include the facts necessary to disposition of this appeal. *See id.*

**PREDICATE FINDINGS**

Madison G. first argues the evidence is legally and factually insufficient to support the trial court's endangerment findings under subsections (D) and (E). *See* TEX. FAM. CODE § 161.001(b)(1)(D) (allowing termination on ground that parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"); *id.* § 161.001(b)(1)(E) (allowing termination on ground that parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child").

With regard to subsection (D), Madison G. focuses on the acceptability of S.G.'s living conditions at the home Madison G. shares with her mother. Specifically, she argues that the Department did not prove that the home was "an ongoing dangerous environment," emphasizing that there was evidence of the home being clean at times, the litter boxes being maintained, and the cats living in the home being friendly. However, "[a]lthough the endangerment analysis under subsection (D) focuses on evidence of the child's living environment, the environment produced by the parents' conduct bears on the determination of whether the child's surroundings threaten his well-being." *In re N.K.*, No. 09-10-00277-CV, 2011 WL 846197, at *1 (Tex. App.—Beaumont Mar. 10, 2011, no pet.); *see also In re E.A.G.C.*, No. 04-24-00322-CV, 2024 WL 4614579, at *2 (Tex. App.—San Antonio Oct. 30, 2024, no pet.) (explaining that parent's conduct can create environment that endangers child's physical or emotional well-being). Thus, subsection D allows termination if the parent's use of alcohol or substances causes a child to be placed or remain in an

"endangering environment." *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied); *see also In re Z.C.*, 280 S.W.3d 470, 474 (Tex. App.—Fort Worth 2009, pet. denied); *Lumpkin v. Dep't of Family & Protective Servs.*, 260 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2008, no pet).

Under subsection (D), we consider evidence of the child's environment before the child's removal. *See In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *3 (Tex. App.—San Antonio Oct. 30, 2019, no pet.). Here, there was evidence presented at trial of the following:

1. Before S.G.'s removal, Madison G.'s use of alcohol endangered S.G.'s physical or emotional well-being. Madison G. was charged with driving while intoxicated in January 2022 and served one year of probation. The family-based case opened in July 2023 after allegations that Madison G. became intoxicated, left the home and S.G., an infant at the time, unsupervised. During the family-based case, the Department received two additional referrals. One of those referrals alleged that Madison G. was intoxicated, "got into an altercation with the [maternal] grandmother." Madison G. left the home, threatening self-harm. She was later found passed out in a nearby ditch, transported to the hospital, and placed on an emergency hold. When the caseworker visited Madison G. at the hospital, Madison G. admitted that she had been drinking, had blacked out, and could not recall what had happened. Madison G. also admitted that she was unable to control her drinking and that she drank frequently. S.G.'s removal from Madison G.'s care was the result of an incident in October 2023, which involved her drinking alcohol to excess. When S.G. was five months old, Madison G. and her friend stopped at a bar. Madison G. was found passed out in the front passenger seat of the car, in the bar's parking lot, with S.G. in the backseat. Madison G. testified at trial that she had ingested alcohol and Trazodone. Madison G. also admitted at trial that S.G. was removed from her care "due to alcoholism."

2. Before S.G.'s removal, Madison G. was not protective of S.G. and had violated the family-based safety plan by allowing Jose G., S.G.'s father, access to S.G. During the family-based case, Jose G.'s access to S.G. was restricted in the family safety plan because of his conviction for sexually assaulting a fourteen-year-old girl. He was a registered sex offender and prohibited from being around children. Madison G. took S.G. to whatever hotel Jose G. was staying, and on several occasions, she allowed him into the home where she was residing with S.G. When confronted with having violated the safety plan, Madison G. offered no valid explanation for allowing Jose G. access to S.G.

We conclude the evidence is legally and factually sufficient to support the trial court's finding under subsection (D). *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (legal and factual

sufficiency standards); *see also In re A.M.M.*, No. 06-05-00039-CV, 2006 WL 42229, at *5 (Tex. App.—Texarkana Jan. 10, 2006, no pet.).

With regard to subsection (E), we consider conduct both before and after the Department removed the child from the home. *See In re C.J.G.*, 2019 WL 5580253, at *3. Thus, the same evidence stated above supports the trial court's subsection (E) finding. Further, there was also evidence at trial that Madison G. had not fully addressed the concerns that led to S.G. being removed from her care. *See In re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, *2 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) ("Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child.").

1. Madison G. testified that before S.G. was removed, the Department wanted her to address her alcoholism by attending AA meetings and a parenting class. In January 2024, having been accepted into Family Drug Court, she signed a contract requiring her to attend Elite Counseling, participate in AA meetings two to three times per week, have no contact with Jose G., complete a parenting course, and attend therapy. However, Madison G. did not complete the AA attendance logs, as requested by the Department, claiming she had not received new sign-in sheets and did not know that she should use blank pages as a substitute. In August 2024, Madison G. was expelled from Family Drug Court because she did not move into CASA Mia housing, as recommended. Further, she had a positive UA test for alcohol in July 2024. She also failed to submit to drug testing on June 16, 2025, which is treated as a positive result. *See In re G.K.T.*, No. 04-22-00313-CV, 2022 WL 16625844, at *3 (Tex. App.—San Antonio Nov. 2, 2022, no pet.); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Although Madison G. testified that she had not used alcohol since November 2023, the trial court, as factfinder, was free to determine her testimony was not credible. *See In re J.O.A.*, 283 S.W.3d at 345 (explaining that the factfinder is the sole judge of the weight and credibility of the evidence).

2. There was evidence that even after S.G. was removed in October 2023, Madison G. continued to have contact with Jose G. As noted above, Jose G. was a registered sex offender because of his conviction for sexual assault of a fourteen-year-old girl. He had also been convicted in April 2022 for assault causing bodily injury to a woman with whom he had a prior relationship. At trial, Madison G. testified she was in a relationship with Jose G. from March 2021 to February 2024. Madison G. further admitted that during her relationship with Jose G., in May 2022, she had been charged with assault causing bodily injury to a family member—a charge that stemmed from an altercation with Jose G. According to Madison G., those charges were dropped because Jose G. "wrongfully accused" her. Despite all this history and the requirement that she not have

contact with Jose G., the caseworker testified that Madison G. continued to have frequent contact with Jose G. through phone calls and face-to-face visits. The caseworker testified that Madison G.'s phone logs showed the last month she had contact with Jose G. was September 2024. The phone logs showed that from February to September 2024, she had contact by phone several times per week with Jose G. The caseworker testified that despite the proof of the phone logs, Madison G. maintained that she had not had contact with Jose G. According to the caseworker, Madison G. had not made the necessary changes to remove the Department's concerns about her alcohol use and not being protective of S.G. Madison G. claimed her last contact with Jose G. was in May 2024 by phone while he was incarcerated in Bexar County. Again, as factfinder, the trial court was free to believe the caseworker's testimony and not believe Madison G.'s testimony. *See In re J.O.A.*, 283 S.W.3d at 345.

We hold the evidence is legally and factually sufficient to support the trial court's finding under subsection (E).[2]

## BEST INTEREST

Madison G. next argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in her child's best interest. We apply the usual standard of review. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* TEX. FAM. CODE § 263.307(b).

First, the same evidence that supported the trial court's findings under subsection (D) and (E) also support the trial court's best-interest finding. *See In re A.B.S.*, No. 04-19-00651-CV, 2020 WL 806950, at *1 (Tex. App.—San Antonio Feb. 19, 2020, no pet.) (explaining that in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct). Second, the following evidence also supports the trial court's best-interest finding:

1. The Department made reasonable efforts toward reunification in this appeal. Multiple service referrals were provided, numerous home visits were conducted, and the Department addressed issues such as Madison G.'s sobriety and her relationship with

---

[2]Having determined there is legally and factually sufficient evidence to support the trial court's predicate findings under (D) and (E), we need not address Madison G.'s issue that the evidence is legally and factually insufficient to support the trial court's predicate finding under subsection (O). *See In re D.J.H.*, 381 S.W.3d 606, 611-12 (Tex. App.—San Antonio 2012, no pet.).

Jose G. Even though the underling case was pending for twenty months, with the trial court previously granting an extension, Madison G. had not shown that she had addressed the concerns that led to S.G.'s removal.

2.  The Department had made efforts to locate relatives for possible placement, including S.G.'s maternal grandmother. However, the Department had concerns about the maternal grandmother's protective capacity because she had allowed Jose G. to spend significant time in the home.

3.  At the time of trial, S.G. was two years of age and had been in foster placement since October 2023 when he was five and a half months old. S.G. was thriving in his foster placement. He had received speech therapy and was successfully discharged. He was bonded with his foster sister, who was the same age, and was strongly attached to his foster parents. His foster placement met all his needs. His foster mother reached out to Madison G. regularly, updating her on S.G.'s progress and inviting her to events such as birthday parties. His foster parents wanted to adopt S.G., and their home is licensed as a foster-to-adopt placement. His foster mother expressed her intent to keep contact with Madison G. open, stating that S.G. deserved access to his birth family for emotional and medical reasons so long as it remained safe for him.

We hold the evidence is legally sufficient to support the trial court's finding that termination of Madison G.'s parental rights is in her child's best interest.

Madison G. emphasizes that at trial, she testified she had secured employment and had arranged for childcare. She also points out that her UAs have been clean for six months and her May 2025 follicle test was negative. She argues that she ended her relationship with Jose G. in February 2024 and sought a no-contact order. She also emphasizes all the services she completed during the pendency of this case. However, given the factfinder's role as the sole judge of the weight and the credibility of the evidence, we conclude the evidence is factually sufficient to support the trial court's best-interest finding. *See In re J.O.A.*, 283 S.W.3d at 345.

### CONSERVATORSHIP

Finally, Madison G. argues that because there is insufficient evidence to support the trial court's findings, the trial court's conservatorship order should also be reconsidered. This issue is contingent on us concluding the evidence was insufficient to support the trial court's findings. As

we have concluded that the trial court's predicate and best-interest findings were supported by legally and factually sufficient evidence, we need not consider this final issue.

## CONCLUSION

We affirm the trial court's order terminating Madison G.'s parental rights.

Adrian A. Spears II, Justice